# Group Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KERR MACHINE CO., | ) | |
| | ) | |
|     Plaintiff/Counter-Defendant | ) | Case No. 19-cv-6942 |
| | ) | |
| v. | ) | Hon. John Z. Lee |
| | ) | |
| LI GEAR, INC., | ) | |
| | ) | |
|     Defendant/Counter-Plaintiff. | ) | |

## NOTICE OF RULE 30(b)(6) DEPOSITION OF KERR MACHINE CO.

TO:    Trevor K. Scheetz
            Sperling & Slater, P.C.
            55 West Monroe Street, Suite 3200
            Chicago, Illinois 60603

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for Defendant, LI GEAR, INC., will take the deposition by oral examination of Plaintiff, KERR MACHINE CO., on the topics included in the Rider attached hereto. The deposition will begin at the date and time set forth below, or another date and time agreed to by the parties. The deposition will be taken in person, at the place set forth below. The deposition will be taken before a notary public or other officer authorized by law to administer oaths and will be recorded by stenographic means.

DATE OF DEPOSITION:    March 21, 2022
TIME OF DEPOSITION:    9:30 a.m. Central
PLACE OF DEPOSITION:  Masuda, Funai, Eifert & Mitchell, Ltd.
                             203 North LaSalle Street, Suite 2500
                             Chicago, Illinois 60601

Dated:  March 9, 2022

Respectfully submitted,

**LI GEAR, INC.**

By:  /s/ Jiwon J. Yhee
Edward J. Underhill, Esq.
Jiwon J. Yhee, Esq.
Kenton P. Knop, Esq.
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
P:  (312) 245-7500
F:  (312) 245-7467
E-Mail:  eunderhill@masudafunai.com
E-Mail:  jyhee@masudafunai.com
E-Mail:  kknop@masudafunai.com

***Attorneys for Defendant, Li Gear, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, the foregoing **NOTICE OF RULE 30(b)(6) DEPOSITION OF KERR MACHINE CO.** was served upon all counsel of record listed below via email transmission.

Trevor K. Scheetz
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, Illinois 60602
tscheetz@sperling-law.com

_____/s/ Jiwon J. Yhee_____

**EXHIBIT A**

**RIDER TO 30(b)(6) DEPOSITION NOTICE TO KERR MACHINE CO.**

Pursuant to the foregoing deposition notice, Federal Rule of Civil Procedure 30(b)(6) and the Local Rules for the United States District Court for the Northern District of Illinois, Defendant Li Gear, Inc., by and through its attorneys, requests that Plaintiff Kerr Machine Co. identify, designate and produce for deposition one or more officers, directors, managing agents or other person(s), knowledgeable to testify on its behalf under oath at a deposition regarding the subject matters set forth in the following topics:

**DEFINITIONS & INSTRUCTIONS**

The Definitions and Instructions contained within Defendant Li Gear, Inc.'s Second Set of Requests for Production and Second Set of Interrogatories, dated January 6, 2022, are incorporated by reference herein.

**TOPICS**

1.      Contracts and agreements between Plaintiff and Li Gear relating to the sale and purchase of gearboxes.

2.      Any terms or conditions that govern Plaintiff's purchase of gearboxes from Li Gear.

3.      Communications between Plaintiff and Li Gear, oral or written, relating to any terms or conditions, potential or otherwise, for the sale and purchase of gearboxes.

4.      All instances when Plaintiff received, obtained, read, reviewed, and/or became aware of Li Gear's standard Terms and Conditions, attached hereto as Exhibit 1, or any version thereof.

5.      Quotes for gearboxes that Li Gear sent or otherwise provided to Plaintiff, including quoted lead times.

6. Purchase orders for gearboxes that Plaintiff sent to Li Gear.

7. Actual delivery dates for gearboxes that Plaintiff ordered from Li Gear.

8. Any delays in Li Gear's delivery of gearboxes to Plaintiff, including any communications between Plaintiff and Li Gear relating to such delays.

9. Plaintiff's receipt, review, knowledge, and/or awareness of Unsworn Declaration of Will Li Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746 and related exhibits, filed in support of Li Gear's Brief in Opposition to Kerr's Motion for Summary Judgment Based on Lack of Personal Jurisdiction in *Li Gear, Inc. v. Kerr Machine Co.*, Case No.: 16-CV-4657 ("Previous Litigation") and attached hereto as Exhibit 2.

10. The settlement agreement between Plaintiff and Li Gear in the Previous Litigation, attached hereto as Exhibit 3.

11. Plaintiff's design and/or customization of the gearboxes that it purchased from Li Gear, or any parts related to such gearboxes, including any drawings that Plaintiff sent to Li Gear and any communications between Plaintiff and Li Gear regarding the same.

12. Plaintiff's purchase of gearboxes, including, but not limited to, the 2018 Gearboxes, from Li Gear.

13. The gearboxes that Plaintiff claims were purchased in or before 2017 and that were allegedly defective ("Allegedly Defective Gearboxes"), including the serial numbers for these gearboxes.

14. Plaintiff's incorporation and/or use of the Allegedly Defective Gearboxes in its products ("Plaintiff's Products").

15.     Investigations of the Allegedly Defective Gearboxes by Plaintiff or any third party on behalf of Plaintiff, including any root cause analyses and investigations of customers' potential misuse of the Allegedly Defective Gearboxes or Plaintiff's Products.

16.     Communications between Plaintiff and any of Plaintiff's customers, including GEFCO and QES Pressure Control, relating to any Allegedly Defective Gearboxes and/or Plaintiff's Products containing the Allegedly Defective Gearboxes.

17.     Any repairs, or attempted repairs, of the Allegedly Defective Gearboxes by Plaintiff or any third party on behalf of Plaintiff, including any replacement of parts in such gearboxes.

18.     The incorporation or use of any non-Li Gear-branded parts in the Allegedly Defective Gearboxes by Plaintiff, or any third party on behalf of Plaintiff.

19.     Communications between Plaintiff and Li Gear, oral or written, relating to the Allegedly Defective Gearboxes, including any warranty claims submitted by Plaintiff with respect to such gearboxes.

20.     Plaintiff's provision of two "gearsets" from certain Allegedly Defective Gearboxes to Li Gear.

21.     Any warranties allegedly associated with the Allegedly Defective Gearboxes.

22.     Plaintiff's alleged cancellation of the 2018 Purchase Orders, including the reasons for the cancellation and which individuals at Plaintiff made the decision to cancel the 2018 Purchase Orders.

23.     Instructions from Plaintiff to Li Gear, if any, relating to the disposition of the 2018 Gearboxes.

24.     Communications between Plaintiff and Li Gear, oral or written, about Li Gear potentially delivering, or being ready and willing to deliver, the 2018 Gearboxes to Plaintiff.

25.     Damages that Plaintiff seeks to recover in this Litigation, including the calculations and underlying documents for the same.

26.     Plaintiff's internal databases for storing and sharing information, and Plaintiff's data retention policies or procedures with respect to the same.

27.     Plaintiff's search for relevant documents in this Litigation, including which custodians and sources of information were searched.



EXHIBIT "1"



# Li Gear, Inc.
# Terms and Conditions

## 1. General

These Terms and Conditions set forth the terms and conditions pursuant to which the purchaser ("**Purchaser**") will purchase and Li Gear, Inc., ("**Seller**") will sell any gears, gearboxes or gear-related products (the "Products"), including any pre-and post-sale services provided by **Seller** in connection with the sale of Products. By ordering the Products, by accepting the Products, and/or by acknowledging the receipt of any quotation, **Purchaser** agrees that these Terms and Conditions shall govern and apply to the sale of the Products to **Purchaser**, regardless of any terms and conditions appearing on any purchase order or other forms submitted by **Purchaser** to **Seller**, given verbally by **Purchaser** to **Seller**, or appearing on **Purchaser's** website. **Seller** expressly rejects any and all other additional, contrary or inconsistent terms and conditions.

## 2. Acceptance/Inspection/Return

All orders for Products are subject to **Seller's** acceptance at **Seller's** office on these terms only. **Purchaser** may not assign any quotation, proposal or order without **Seller's** prior written consent. **Purchaser** shall not return any Products delivered to **Purchaser** without the written consent of, and upon terms agreed to by, **Seller**. **Purchaser** is advised to promptly inspect all Products upon receipt, and not to open any Product containers that show any signs of damage or tampering. **Purchaser** waives any claim that Products are defective or non-confirming as a result of damages that occurred in delivery upon **Purchaser's** opening of the Product packaging. **Purchaser** shall otherwise promptly notify **Seller** in writing of any defects or non-conformities in Products upon its receipt of the Products. Failure to provide such written notice within five business days of **Purchaser's** receipt of the Products shall constitute a waiver of any right to reject the Products or to revoke **Purchaser's** acceptance of the Products.

See **Seller's** "Return Authorization Policy" for additional information on the return of Products.

## 3. Price/Taxes

1. All prices are subject to change by **Seller** without notice prior to **Seller's** acceptance of **Purchaser's** order.

2. All prices are subject to change by **Seller** after **Seller's** acceptance of **Purchaser's** order pursuant to the terms and conditions of **Seller's** Quotation or any document incorporated therein or attached thereto.



3.      All prices are subject to change by **Seller** at any time in the event of any change in **Purchaser's** requirements, including a change in **Purchaser's** delivery, production, or packing requirements (quoted price including **Seller's** standard packing).

4.      All prices are exclusive of all federal, state, municipal, or other governmental entity's excise, sales, use, occupational, or any other taxes now imposed or hereafter becoming effective.

5.      **Purchaser** shall be responsible for collecting and/or paying any and all such taxes, whether or not they are stated in any invoice. **Purchaser** shall indemnify **Seller** from and against the imposition and payment of such taxes. **Seller** may separately bill **Purchaser** for any taxes not included in **Seller's** invoice and **Purchaser** shall pay said taxes, or in lieu thereof, shall provide **Seller** with a tax exemption certificate acceptable to taxing authorities. If **Seller** arranges for transportation of the Products from **Seller's** location, all costs and expenses relating thereto shall be paid by **Purchaser** to **Seller** upon presentation of **Seller's** invoice therefor.

6.      All prices for the Products are F.O.B. Chicago, Illinois, unless otherwise specified by **Seller**.

7.      Quoted pricing for Products excludes costs of shipping from Chicago to **Purchaser's** delivery location, taxes, and insurance.

8.      In special circumstances and upon mutual agreement between **Seller** and **Purchaser**, alternate shipping arrangements, including direct delivery to **Purchaser**, may be made at **Purchaser's** expense.

9.      If delivery or installation of the Products is delayed primarily due to the fault of **Purchaser**, all additional expenses incurred by **Seller** resulting from such delay shall be chargeable to and paid by **Purchaser**. Such expenses shall include charges for storage.

## 4.    Delivery and Freight Charges

1.      The shipping date(s) specified in **Seller's** Quotations are <u>approximate</u> only and may be affected by circumstances beyond **Seller's** control.

2.      The final shipping date(s) will be computed after **Seller** has receive all the data it requires to manufacture or engineer goods for **Purchaser** or after **Seller** accepts **Purchaser's** order, whichever is later.

3.      Every effort will be made to effect shipment within the time stated. However, **Seller** shall not be liable for any damages resulting directly or indirectly from delays in the manufacture, shipping, or delivery of goods caused by fire, flood, war, or riot, embargo, strikes, acts of God, acts of civil or military authorities, civil strife or insurrection, transportation delay, whether at place of manufacture



or elsewhere, fuel, power, or other energy or material shortages, or from delay by reason of any rule, regulation or order of any governmental authority, or from other causes beyond **Seller's** control. In the event of such delay, the shipping date shall be extended for a reasonable length of time, but not less than the time actually lost by reason of the delay.

4.  Any change in **Purchaser's** requirements will require the <u>confirmation</u> or <u>revision</u> of the shipping date(s) by **Seller**.

5.  IN NO EVENT SHALL **SELLER** BE LIABLE FOR ANY INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OCCASIONED BY **SELLER'S** OR **SELLER'S** AGENTS' DELAYS, WHETHER OR NOT BEYOND **SELLER'S CONTROL**.

## 5.   Invoices/Payment Terms

**Seller** will issue **Purchaser** an invoice upon delivery of Products to **Purchaser** or to a location or carrier selected by **Purchaser** in accordance with Section 4. Full payment is due within thirty (30) days of the invoice date.

## 6.   Tooling Fee

Certain orders may incur a tooling fee, which will be separately quoted. If a tooling fee is required, it must be paid by **Purchaser** when the order is confirmed and production will not commence until the fee is paid. All tooling fees are non-refundable.

## 7.   Late Payment

In the event any amount due from **Purchaser** is not timely paid, such amount will accrue interest at a rate of 12% per annum. In addition, **Purchaser** will pay all costs and expenses incurred in connection with the collection of such unpaid amount and interest, including reasonable attorneys' fees and court costs.

## 8.   Cancellation

In the event **Purchaser** requests **Seller** to stop work on or cancel an order or any part thereof, cancellation charges shall be paid to **Seller** as follows:

1.  Any work that has been completed or is scheduled to be completed within 30 days of the date **Purchaser** notifies **Seller** in writing to stop work or to cancel shall be invoiced to and be paid in full by **Purchaser**.



2.     **Purchaser** must pay the actual costs and overhead expenses, plus 20%, for work in process not covered by paragraph 8.1., and any materials and supplies procured or for which commitments have been made by **Seller** in connection with **Purchaser's** order.

3.     **Purchaser** shall promptly instruct **Seller** as to the disposition of the Product and **Seller** shall, if requested, hold the Product for **Purchaser's** account for a reasonable period of time.  All costs of storage, insurance, handling, boxing, and or any other costs in connection with such storage shall be borne by **Purchaser**.

In the event of cancellation, **Seller** shall also be entitled to all applicable remedies under the Uniform Commercial Code or other applicable law.

## 9.   Warranty

(a)     **Purchaser** acknowledges that **Seller** has no control over, and is and is not responsible for the manner in which the Products will be used or otherwise be applied by the **Purchaser**.  The **Purchaser** therefore agrees to assume all responsibility for any and all sums which the **Seller** and/or the **Purchaser** becomes obligated to pay because of bodily injury or property damages caused by or resulting directly or indirectly from the installation, maintenance, use, or operation of the Products, or the failure of the Products to comply with any safety laws or regulations.  **Purchaser** shall indemnify and hold **Seller** harmless from and against any and all actions, claims or demands arising out of or in any way connected with the installation, maintenance, use, or operation, of the Products, or the design, construction or composition of any item or items made or handled by the Products supplied hereunder, including any such actions, claims and demands based in whole or in part on the default or negligence of the **Seller**.

(b)     <u>**Limited Warranty.**</u>  **Seller** warrants that the Products sold hereunder will be free from defects in material and workmanship at the time of delivery. In the event that any defects in material or workmanship shall be discovered or become evident in the Products within one year from the date the Products are delivered to **Purchaser**, **Seller** shall repair or replace any defective Products or part thereof, or refund the purchase price thereof, as set forth herein, at **Seller's** sole and exclusive election, subject to the limitations set forth in these Terms.

All parts and/or components of Product(s) alleged to be defective shall at all times be subject to inspection by **Seller** and **Purchaser** shall not dispose of or otherwise modify or destroy the same before inspection by **Seller**. All such parts and/or components shall be returned by **Purchaser** to **Seller** upon **Seller's** request. Furthermore, all freight and related expenses for the return of any alleged defective parts/components and the shipment and delivery of replacement parts and components to **Purchaser** shall be for the account of **Purchaser** and **Purchaser** shall pay the same and/or reimburse **Seller** for the same to the extent paid/incurred by **Seller**.



(c)    **Limitations.** **SELLER'S WARRANTY HEREIN IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES OF SELLER AND THE MANUFACTURER OF THE PRODUCTS (COLLECTIVELY, "Manufacturing and Selling Parties"), WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE CREATED UNDER APPLICABLE LAW, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR USE, AND ANY WARRANTY BY SAMPLE. IN NO EVENT SHALL SELLER OR THE MANUFACTURING PARTIES BE LIABLE (AND PURCHASER SHALL NOT ASSERT ANY CLAIM) FOR SPECIAL, INCIDENTAL, COMPENSATORY OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS.**

**IN ADDITION, THIS WARRANTY SHALL NOT APPLY TO ANY PRODUCTS OR PORTIONS THEREOF WHICH HAVE BEEN SUBJECTED TO ABUSE, MISUSE, IMPROPER INSTALLATION, MAINTENANCE OR OPERATION (INCLUDING, BUT NOT LIMITED TO, THE MATTERS SET FORTH IN SUBPARAGRAPH 5(c) HEREOF), ELECTRICAL FAILURE OR ABNORMAL CONDITIONS; AND TO PRODUCTS THAT HAVE BEEN TAMPERED WITH, ALTERED, MODIFIED, REPAIRED OR REWORKED BY ANYONE NOT APPROVED BY SELLER. THIS WARRANTY SHALL NOT APPLY TO THE PORTIONS OF THE PRODUCTS NOT MANUFACTURED BY SELLER AND THE MANUFACTURING PARTIES. PURCHASER'S SOLE AND EXCLUSIVE REMEDIES UNDER THIS WARRANTY SHALL BE LIMITED, AT SELLER'S EXCLUSIVE DISCRETION, TO: (1) REPLACEMENT OF ANY DEFECTIVE PRODUCTS OR PART THEREOF; OR (2) REPAIR OF ANY DEFECTIVE PRODUCTS OR PART THEREOF; OR (3) RETURN OF THE PURCHASE PRICE FOR ANY DEFECTIVE PRODUCT OR PART THEREOF. IN NO EVENT SHALL SELLER'S LIABILTY HEREUNDER OR OTHERWISE ARISING RELATIVE TO THE SALE OF THE PRODUCTS EXCEED IN ANY EVENT OR UNDER ANY THEORY OR CAUSE OF ACTION, THE PURCHASE PRICE PAID BY PURCHASER TO SELLER FOR THE DEFECTIVE PRODUCT(S).**

(d)    **Only Warranty is Found in These Terms.** No agent, employee or representative of **Seller** (or any distributor, dealer or sales representative of **Seller**) has the authority to bind **Seller** to any affirmation, representation or warranty concerning the Products sold hereunder, and unless such affirmation, representation or warranty is specifically included in these Terms and Conditions, it will not form a part of the basis of these Terms and Conditions and shall in no way be binding upon the **Seller** or enforceable by **Purchaser**.

(e)    **Limitations of Actions.** Any statute or law to the contrary notwithstanding, any actions to recover for any loss or damage arising out of, connected with, or resulting from any Quotation for or sale of Products, or from the performance or breach thereof must be commenced with one (1) year period after the cause of action accrues to **Purchaser**, unless otherwise extended by **Seller** in writing. It is expressly agreed that there are no warranties of future performance pertaining to the Products that are the subject of these Terms and Conditions that would extend such one-year period of limitation.



## 10. Patent Infringement

**Seller** is not aware of any patents that might apply to the Products or their designs, and therefore, Seller makes no representation that the Products will not in and of themselves infringe any patent of the United States. Purchaser shall bear all responsibility for ensuring the Products do not infringe on any patent rights or know-how, and Purchaser shall defend, indemnify, and hold harmless Seller in the event a claim is asserted against either party for such infringement, regardless of whether such claim has any merit.

In no event will **Seller** and/or Selling Parties be liable for any patent infringement based on the use of the Products for purposes other than those for which they are sold by **Seller**. **Seller** makes no warranty against patent infringement resulting from portions of the Products made to **Purchaser's** specifications or the use of Products in combination with any other Products or in the practice of any process and if a claim, suit or action against the Manufacturing or Selling Parties is based thereon, **Purchaser** shall defend, indemnify and save **Seller** and the Manufacturing and Selling Parties harmless from and against any and all claims, losses or damages arising there from.

## 11. Non-Circumvention

**Purchaser** agrees that for as long as it is doing business with **Seller** and for three (3) years after the delivery of and payment for the Products covered in **Purchaser's** final purchase, it will not: i) directly or indirectly, place orders with, or attempt to purchase goods from, **Seller's** suppliers for Products that **Seller** has sold to **Purchaser** or similar Products, or provided quotes for; or ii) direct potential purchasers to **Seller's** suppliers or assist potential purchasers to contact **Seller's** suppliers.  It is acknowledged and agreed that **Purchaser** will be deemed to be in material breach of this agreement if any entity controlled by, or under common control with **Purchaser**, violates this "non-circumvention" provision.  **Purchaser** understands that this restriction is necessary and reasonable due to the considerable time, effort and cost expended by **Seller** in identifying, vetting and cultivating a relationship with reliable suppliers, and establishing such suppliers as a valuable resource of **Seller**.  In the event **Purchaser** approaches **Seller's** suppliers, directly or indirectly, without **Seller's** consent or involvement, **Purchaser** agrees that it will have caused irreparable harm to **Seller's** business.

## 12. Force Majeure

**Seller's** obligations hereunder are subject to, and **Seller** shall not be held responsible for, any delay or failure to make delivery of all or any part of the Products due to acts or circumstances beyond the control of **Seller**, including, but not limited to, labor difficulties, fires, casualties, accidents, acts of God, acts of terrorism, materials fluctuations in currency exchange rates, transportation difficulties, inability to obtain Products, materials, components or qualified labor sufficient to timely perform part or all of any obligation, or governmental regulations or actions.  In the event of the occurrence of any of the foregoing, at the option of **Seller**, **Seller** shall be excused from the performance hereunder or the performance of the **Seller** shall be correspondingly extended.



## 13.   Miscellaneous Provisions

a.   These Terms and Conditions constitute the entire agreement between **Seller** and **Purchaser** as it relates to the purchase and sale of Products to **Purchaser** by **Seller** and the liability of the Manufacturing and Selling parties, and supersede any and all prior agreements, correspondence, quotations or understandings heretofore enforced between the parties relating to the subject matter hereof.

b.   If any term or condition or part of these Terms and Conditions is held invalid, the remaining terms and conditions hereof shall not be affected thereby.

c.   These Terms and Conditions may be modified, canceled or rescinded only by a written agreement by both parties executed by their duly authorized agents.

d.   All rights available to **Seller** under the Uniform Commercial Code except as specifically limited or excluded herein (even though not specifically enumerated), are reserved to **Seller** as remedies available in the event of default or breach by **Purchaser**.

e.   This agreement and any sale of Products to **Purchaser** shall be deemed to have been made in and governed by the substantive laws of the State of Illinois, without regard to choice-of-law provisions. **Seller** and **Purchaser** irrevocably consent to the exclusive jurisdiction of the courts of the State of Illinois (and the Federal courts having jurisdiction in the State of Illinois) for purposes of any judicial proceeding that may be instituted in connection with any matter arising out of or relating to these terms or any sales pursuant hereto.

f.   Any failure by either party to enforce at any time any term or condition hereof shall not be considered a waiver of such party's right thereafter to enforce the same or any other term or condition hereof.

g.   These Terms and Conditions shall be binding upon the successors and legal representatives of **Purchaser** and **Seller**.

h.   The Terms and Conditions and any agreement between the parties may not be assigned without the express written consent of the parties hereto. Any attempted assignment of rights or delegation of duties shall be void.

i.   Upon request by **Seller**, **Purchaser** shall provide **Seller** with all customer information and documentary and other assistance required to maintain strict compliance with federal, state and local laws. **Purchaser** shall take all actions as may be necessary to assure that no customer contravenes any laws or the provisions of any approvals/licenses or exemptions. **Seller** shall be relieved of all obligations to provide any Products, spare parts or technical data to **Purchaser** (or its customer(s)) if



**Purchaser** (or such customer) violates any laws, or if any approvals/licenses are suspended or revoked.

## 14. Confidentiality

All drawings, designs, specifications, manuals and programs furnished to **Purchaser** by **Seller** shall remain the confidential and proprietary property of **Seller**. **Purchaser** hereby agrees that such information, except as may be found in the public domain, shall be held in strict confidence by **Purchaser** and shall not be disclosed or circulated by **Purchaser** to any third parties.  Copyright in all materials made available by **Seller** shall remain in **Seller** at all times.

## Contact Us

If you have any questions regarding this policy, please contact:

Li Gear, Inc.
Attn: Mr. Will Li, Vice President
1292 Lakeview Drive
Romeoville, IL 60446
Phone: 630.226.1688
Email: wli@ligear.com



EXHIBIT "2"

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LI GEAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 16-CV-04657 |
| v. | ) | |
| | ) | Honorable John Robert Blakey |
| KERR MACHINE CO., | ) | |
| | ) | Honorable Magistrate Mary M. Rowland |
| Defendant. | ) | |

**UNSWORN DECLARATION OF WILL LI UNDER PENALTY OF
PERJURY PURSUANT TO 28 U.S.C. §1746**

I, Will Li, hereby declare the following under penalty of perjury.

1.      I am the Vice President of Li Gear, Inc. (hereinafter, "Li Gear").  I have been employed by Li Gear in this position for approximately seven years, and I am personally familiar with the sale in September of 2014 by Li Gear to Kerr Machine Co. ("Kerr"), of 45 gear boxes at a unit price of $14,000 for a total purchase price of $630,000.  This sale (hereinafter, the "Subject Sale") and Kerr's refusal to accept delivery of the subject gear boxes and pay the agreed-upon purchase price gives rise to Li Gear's lawsuit against Kerr.

2.      I am also familiar with Kerr, having previously been asked by managers of the company to provide sales quotes in connection with the sales of goods by Li Gear to Kerr.  I have also reviewed the Answers to Interrogatories provided by Kerr Pumps and the documents which it has produced in the case to date.  Accordingly, I am competent to provide the statements contained

in this Declaration based on my personal knowledge and my review of sales records kept in the ordinary course of Li Gear's business.

3.     Li Gear is an Illinois corporation, having its principal place of business at 1292 Lakeview Drive, Romeoville, Illinois 60446.  Li Gear has been in business since 1997, and since 2005 has operated out of its offices and warehouse at 1292 Lakeview Drive, Romeoville, Illinois 60466.  This is Li Gear's only business location.  Li Gear designs and manufactures sophisticated industrial gears, gear boxes, and related products for commercial customers.

4.     Li Gear does not have any offices in any other state, including Oklahoma.

5.     Li Gear is a family-owned company, employing five full-time employees.  My father, John Li, is the President of Li Gear, and its senior engineer.

6.     I agree that nearly all of Li Gear's in-person contacts with employees of Kerr, including with its president, Mark Nowell, and Jake Foster, its Operations Manager, occurred at oil-and-gas industry trade shows, typically in Texas.  I'm quite certain that we gave Mark Nowell and Jake Foster our business cards when we first met them at a trade show in Odessa, Texas in 2012.  Our business cards identify our company as being located in Illinois.  In addition, we had many conversations with Mark Nowell and Jake Foster, as well as other employees of Kerr, about

our company and family, and they would have certainly known by early 2014, that Li Gear was and is an Illinois company.

7.     In January of 2014, we received an e-mail from Mike May, the Vice President of Engineering at Kerr, asking Li Gear to provide a quote for three different types of gears.  May's e-mail dated January 10, 2014 was likely mistakenly addressed to John Li, instead to me.  May's e-mail states, "Our primary Gear supplier has let us down so this would be an excellent opportunity to help us make quick Delivery if your Price is good.  Attached are the drawing PDF files [for] your records."

8.     The January 10th e-mail further states, "As always [if] there are technical issues, corrections, or improvements that would be mutually beneficiary...  please don't hesitate to contact me or Jake anytime.  Thanks, Mike."

9.     The January 10, 2014 e-mail from Kerr initiated the business relationship between Kerr and Li Gear.

10.     On January 13, 2014, Kerr's Mike May sent a follow-up e-mail to Li Gear, this time to me, Will Li, in which he stated, "I should have sent this to you and copied John last Friday.  What can you do to help us on this?  Please contact me or Jake at your earliest convenience."

11.     Jake Foster (of Kerr) and I had several subsequent phone conferences discussing the specifications for the gears to be built, which resulted in an e-mail from me to Jake Foster and Mike May dated February 7, 2014.  In that e-mail, I stated, "We will machine and grind [the

requested bull gear] to the same tight tolerances we are known for in the frac pump market…"  A copy of the exchanged e-mails is attached hereto as a single document as Exhibit A.

12.    I attached to my e-mail of February 7th, a standard-form Li Gear Quote for the requested gears.  The purchase price for the two types of gears Kerr wanted to buy was $7,600 each and the quoted price for the pinion shaft was $11,300, so the products we were discussing were not small, commodity-type products a company might buy without giving the matter much attention.  Kerr asked us to give them a quote for ten of each item.

13.    The front page of the sales quote contains the heading, "Sales Subject to Li Gear's Terms and Conditions of Sale."  Under this heading, the Quote states, "All sales and sales quotes, including this quote, as well as all other estimates, proposals, and/or offers to sell, including samples, are subject to Li Gear's Standard Terms and Conditions of Sale, and it's Standard Warranty, which can be found at our company website or by requesting a copy from the Company. All acceptances of quotes and/or purchase orders are deemed to have included, by reference to this quote, Li Gear's Standard Terms and Conditions."  A copy of the Li Gear Quote dated February 7, 2014 is attached hereto as Exhibit B.

14.    Li Gear's sales quote identifies its address as 1292 Lakeview, Romeoville, Illinois and the website for Li Gear where the Li Gear Standard Terms and Conditions can be found is

shown immediately below the statement notifying customers that all sales are subject to Li Gear's standard Terms and Conditions.

15.     Li Gear began posting its standard Terms and Conditions of sale as a direct link on its website in 2011, at the latest, and anybody from Kerr would have been able to obtain our Terms and Conditions with one direct click after opening our webpage.

16.     Paragraph 13(e) of the Li Gear Terms and Conditions of Sale states, "This agreement and any sale of products to **Purchaser** shall be deemed to have been made in and governed by the substantive laws of the State of Illinois, without regard to the choice of law provisions. **Seller** and **Purchaser** irrevocably consent to the exclusive jurisdiction of the Court of the State of Illinois (and the Federal courts having jurisdiction in the State of Illinois) for purposes of any judicial proceeding that may be instituted in connection with any matter arising out of or relating to these terms or any sales pursuant hereto." A copy of Li Gear's standard Terms and Conditions obtained from the website on October 20, 2016 is attached hereto as Exhibit C.

17.     I can certify from my own personal knowledge that the version of Li Gear's standard Terms and Conditions currently posted on our website is the same version that was posted throughout 2014 (In fact, I note that the each page of the electronic document contains a footer of

"(5/11)," which means that this version of the company's Terms and Conditions of sale was prepared and posted in May of 2011, and was available to Kerr in 2014 or earlier.)

18.     Ultimately, Kerr did not issue a purchase order to Li Gear for the gears that they initially asked us to quote. But Li Gear's February 7, 2014 Quote put Kerr on notice that "all sales" by Li Gear are subject to Li Gear's standard Terms and Conditions.

19.     The February 2014 transaction, though not completed, was the beginning of an ongoing business relationship between Kerr and Li Gear. In addition, this initial request for a quote by Kerr demonstrates that Kerr's anticipated and actual purchases from Li Gear were not for mere stock items to be purchased at a list price, but were, in fact, negotiated purchases of highly-engineered industrial gears and gear boxes.

20.     Kerr, like nearly all of Li Gear's customers, was not a passive purchaser who simply placed an unsolicited purchase order for a commodity product. Kerr was actively involved in its purchase of products from Li Gear. It would provide us with incomplete drawings of the products it needed, and require Li Gear to complete the drawings in Illinois prior to manufacturing the products. This involved numerous phone calls between Kerr and Li Gear to determine the correct product materials, quality-levels and specifications in order to meet Kerr's application requirements. From the start of our business relationship, Kerr was well-aware that Li Gear's engineers would be performing this design work in Illinois. Kerr also knew that these gears and

6

gear boxes would be manufactured in China, so there was no practical reason for Kerr to visit Li Gear's facilities in Illinois.

21.     In late May of 2014, I encountered Mark Nowell and Jake Foster of Kerr at a trade show in Texas, and Mark Nowell asked Li Gear to submit a quote for gear boxes.  On May 22, 2014, I sent an e-mail to Jake Foster attaching a quotation for the requested gear boxes.  The e-mail included reference to "our account and billing information, "which indicated payment was to be made at Li Gear's place of business in Romeoville, Illinois. The Li Gear Quote dated May 22, 2014 included the same heading and terms as the February 7th Quote, which referenced Li Gear's standard Terms and Conditions.  A copy of my e-mail dated May 22, 2014 and the Quote of the same date is attached hereto as Exhibit D.

22.     On May 23, 2014, I received an e-mail from Jake Foster attaching their Purchase Order for the gear boxes we quoted them on.  Although their purchase order contained "Order Terms and Conditions," none of those terms differed in any material way from Li Gear's Terms and Conditions.  Li Gear accepted the purchase order for the requested gear boxes (described in the purchase order as "QWS1000S GEAR REDUCER COMPLETE w/DRIVE COMPANION FLANGE") and began the necessary design work from its Illinois office to manufacture the requested gear boxes.  Even after we received Kerr's purchase order, Kerr's Jake Foster and I continued to have phone discussions regarding the manufacture of the gear boxes.  In response to one such phone call he made to me, I sent him an e-mail providing detailed information on the dimension of the gear boxes and the materials that we were using to construct them.  A copy of

Kerr's May 23, 2014 e-mail, its Purchase Order of May 23, 2014, and my e-mail dated May 28, 2014 to Jake Foster are attached hereto as Exhibit E.

23.    Li Gear manufactured the gear boxes, delivered them to their facilities in Sulphur, Oklahoma and subsequently issued its invoice for the delivered gear boxes, and Kerr paid Li Gear with a check that was sent to Li Gear's office in Romeoville, Illinois.  See the e-mails I exchanged with Kerr's accounts payable manager, Micalyn Wheelwright in December of 2014, which confirm that Kerr issued a check to Li Gear and was mailing it to Li Gear's office in Romeoville. A copy of Li Gear's invoice dated November 11, 2014 and the December 2014 e-mails are attached hereto as Exhibit F.

24.    Li Gear received two checks from Kerr at its offices in Romeoville, Illinois, and we deposited both checks at our bank in Illinois.

25.    Nobody at Kerr ever requested a printed copy of Li Gear's Standard Terms and Conditions of Sale in 2014 or before.  They certainly could have obtained a copy from our website at any time.  They did ask about our Limited Warranty on a couple of occasions, and I told them it was a one-year warranty and that they could see the full warranty by going to our Terms and conditions on the website. I note that in his Declaration, Mark Nowell does not say he had not seen our Terms and Conditions of Sale prior to Kerr's first purchase from Li Gear in May of 2014 or prior to the subject sale. Nor does he state that neither he nor anybody else I spoke with regularly at Kerr ever accessed those terms and conditions from our website prior to placing the purchase order that initiates the subject sale.  In any event, Kerr Pumps, without question, was put on notice that Li Gear's Terms and Conditions of Sale would apply to the Subject Sale and all sales

8

transactions and that it could have obtained a copy of the Standard Terms and Conditions from Li Gear's website.

26.    In about mid-September of 2014, I was again contacted by telephone by Jake Foster asking if Li Gear could provide a large quantity of the same gear boxes ("QWS1000S GEAR REDUCER COMPLETE w/DRIVE COMPANION FLANGE") purchased in May of 2014, with at least some to be delivered as soon as possible.  We discussed the price to be paid, as he wanted to be sure they would be the same price as the gear boxes we quoted and sold to them in May ($14,000 for each unit).  I told them that our prior quote was still good.  We subsequently received their purchase order dated September 18, 2014.  This is the purchase order attached to the Complaint as Exhibit A, and is the purchase order for the Subject Sale.

27.    Because I had previously provided Kerr with a Quote for this product that stated, "all sales" by Li Gear were subject to Li Gear's Terms and Conditions of sale, there was no need for me to send a Quote when we had already confirmed that our prior quote was still effective, and we had received the purchase order.  I believed and still believe that Li Gear's standard Terms and Conditions of sale were a part of all of our sales to Kerr, including the Subject Sale.  Certainly, in his Declaration, Mark Nowell acknowledges that Kerr had received and seen our standard Quote

before it issued the purchase order of September 18, 2016, and so he should have been aware of Li Gear's standard Terms and Conditions.

28.    The purchase order dated September 18, 2016 is, in fact, "related" to written documents of Li Gear, including the previously-given Quotes and Li Gear's Terms and Conditions of Sale, which were always available for Kerr to access, and which it may have accessed.

29.    I disagree with the statement Mark Nowell makes in his Declaration (Paragraph 12) that the "relationship between Plaintiff and Kerr is the result of Plaintiff promoting its product to Kerr at various trade shows."  The relationship between our companies was primarily the result of Kerr's employees contacting Li Gear and asking us to quote on various projects.  In fact, as stated above, the first contact came because Kerr's primary gear supplier "had let us down."  Kerr needed gears in a hurry and they came to Li Gear for assistance – they solicited Li Gear; we did not solicit them (I note that Mike Mays' e-mail of January 13, 2014 was sent to me with the designation, "Importance: High.")

30.    I traveled to Kerr's place of business twice.  The first time was in 2012, essentially to introduce ourselves and to see if Kerr was a good fit or potential customer for us.  It was an introductory meeting, encouraged by a mutual acquaintance.  Nothing came of that meeting.  The

second time was in April of 2014, after we had given Kerr the first quote, which they had not accepted. Neither visit was in any way related to the Subject Sale.

31.     Mark Nowell acknowledges that the Subject Sale was not just an isolated, passive purchase order. He even uses the phrase "relationship" to describe the on-going business dealing between the two companies. (See Paragraph 12 of his Declaration).

32.     If Kerr had not breached its obligations under its own purchase order, it would have been required to make payment for the subject gear boxes to Li Gear in the State of Illinois, as it did in its prior purchase of gear boxes. This is clearly acknowledged by Kerr in the "Pay To" Section of its purchase order for the Subject Sale. (See Exhibit A to the Complaint).

33.     Kerr's executives and sales personnel have told me that they attend trade shows in Illinois, including the International Manufacturing Technology Show ("IMTS") held every two years in Chicago, and I believe they told me they attended the show held in 2014.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 24st day of October, 2016 at Romeoville, Illinois.


By:  /s/ Will Li
_____
**WILL LI, Vice-President**

N:\SYS08\12700\Lit\10020 Unswon Declaration of Will Li Final.docx

# EXHIBIT "A"

**Ed Underhill**

| | |
|---|---|
| **From:** | Will Li <wli@ligear.com> |
| **Sent:** | Friday, February 07, 2014 1:48 PM |
| **To:** | Jake Foster; Mike May |
| **Subject:** | Li Gear QWS 2500HD Bull Gear and Pinion Quote |
| **Attachments:** | 3477-LG14-KP (Bull Gear and Pinion).pdf |

Hello Jake and Mike,

Happy Friday gentlemen.

I've attached our quote for your QWS 2500HD bull gear and pinion. We are excited about the opportunity to make your 6.5" face width bull gear set out of one piece forgings. We will machine and grind them to the same tight tolerances we are known for in the frac pump market. We are equally excited about making your 84.3" quint pinion. Please have peace of mind that we are well experienced with the special heat treat process and tolerances required to make these pinions correctly.

Thank you again for this opportunity and I look forward to serving your business and helping it grow.

Respectfully,

Will


Will Li
Li Gear, Inc.
1292 Lakeview Drive
Romeoville, IL 60446
T: 630.226.1688
E: wli@ligear.com

Statement of Confidentiality.
The contents of this message and its attachments (if any) may be proprietary and/or confidential and are intended solely for the addressee(s) hereof. In addition, this message and its attachments (if any) may be subject to non-disclosure or confidentiality agreements or applicable legal privileges, including privileges protecting communications between attorneys or solicitors and their clients or the work product of attorneys and solicitors. If you are not the named addressee, or if this message has been addressed to you in error, please do not read, disclose, reproduce, distribute, disseminate or otherwise use this message or any of its attachments. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this message in error, please alert the sender; we also request that you immediately delete or destroy this message and its attachments (if any).

**From:** Mike May [mailto:MMay@kerrpumps.com]
**Sent:** Monday, January 13, 2014 1:49 PM
**To:** Will Li
**Cc:** Jake Foster
**Subject:** Will, Our primary Gear supplier has let us down so this would be an excellent opportinity to help us make quick Delivery if your Price is good. Attached are the drawing PDF files your your records. Thanks, Mike
**Importance:** High

Will,
I should have sent this to you and copied John last Friday.
What can you do to help us on this?
Please contact with me or Jake at your earliest convenience.
Thanks,
Mike

Mike May, PE
VP Engineering



2214 W. 14th Street
Sulphur, OK 73086
T: 580.622.4207 or 800.441.8149
F: 580.622.4206 or 580.622.2458
E: mmay@kerrpumps.com
W: www.kerrpumps.com
W: www.flowvalve.com

*********************************************************************
DISCLAIMER:
This transmission from Kerr Pumps or Flowvalve LLC is confidential and solely for the use of the intended recipient. If you have received this email in error, please notify the sender and delete and destroy the original transmission and all copies. Our company accepts no liability for the contents of this email, or for the consequences of any actions taken on the basis of the information provided, unless that information is subsequently confirmed in writing. Please note that any personal views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

**From:** Mike May
**Sent:** Friday, January 10, 2014 5:05 PM
**To:** John Li (jli@ligear.com)
**Cc:** Jake Foster (jfoster@kerrpumps.com)
**Subject:** John ... Our primary Gear supplier has let us down so this would be an excellent opportunity to help us make quick Delivery if your Price is good. Attached are the drawing PDF files your your records. Thanks, Mike

John,
As always is there are technical issues, corrections, or improvements that would be mutually beneficiary ... please don't hesitate to contact me or Jake anytime.
Have a great weekend.
Thanks,
Mike

Mike May, PE
VP Engineering



2214 W. 14th Street
Sulphur, OK 73086
T: 580.622.4207 or 800.441.8149
F: 580.622.4206 or 580.622.2458
E: mmay@kerrpumps.com
W: www.kerrpumps.com
W: www.flowvalve.com

*********************************************************************
DISCLAIMER:
This transmission from Kerr Pumps or Flowvalve LLC is confidential and solely for the use of the intended recipient. If you have received this email in error, please notify the sender and delete and destroy the original transmission and all copies. Our company accepts no liability for the contents of this email, or for the consequences of any actions taken on the basis of the information provided, unless that information is subsequently confirmed in

writing. Please note that any personal views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

# EXHIBIT "B"



Friday, February 7, 2014

Kerr Pumps
2214 West 14th Street
Sulphur, OK 73086
T: 580.622.4207

Quotation: 3477-LG14-KP (Bull Gear and Pinion)

| Part No. | Description | Quantity | Unit Price |
|----------|-------------|----------|------------|
| B500101 | GEAR, R.H. HELIX DRIVEN, 6.353:1 RATIO, 6.5" FACE WIDTH ONE PIECE FORGING | 10 | $7,600 |
| B500201 | GEAR, L.H. HELIX DRIVEN, 6.353:1 RATIO, 6.5" FACE WIDTH ONE PIECE FORGING | 10 | $7,600 |
| B500301 | PINION SHAFT, KEYED, QUINT, 84.3" LENGTH | 10 | $11,300 |

Prices:     FOB Fort Worth, Texas. Quote valid for 15 days.

Terms:      Net 15 days.

Delivery:   20 week lead time. Lead time can improve if necessary.

Warranty:   See Li Gear's Standard Limited Warranty.

Sales Subject to Li Gear's Terms and Conditions of Sale. All sales and sales quotes, including this Quote, as well as all other estimates, proposals, and/or offers to sell, including samples, are subject to Li Gear's standard Terms and Conditions of Sale, and its standard Warranty, which can be found at our company website or by requesting a copy from the Company. All acceptances of Quotes and/or Purchase Orders are deemed to have included, by reference to this Quote, Li Gear's Standard Terms and Conditions.

Statement of Confidentiality. The contents of this message and its attachments (if any) may be proprietary and/or confidential and are intended solely for the addressee(s) hereof. In addition, this message and its attachments (if any) may be subject to non-disclosure or confidentiality agreements or applicable legal privileges, including privileges protecting communications between attorneys or solicitors and their clients or the work product of attorneys or solicitors. If you are not the named addressee, or if this message has been addressed to you in error, please do not read, disclose, reproduce, distribute, disseminate or otherwise use this message or any of its attachments. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this message in error, please alert the sender; we also request that you immediately delete or destroy this message and its attachments (if any).

# EXHIBIT "C"



# Li Gear, Inc.
# <u>Terms and Conditions</u>

## 1.    General

These Terms and Conditions set forth the terms and conditions pursuant to which the purchaser ("**Purchaser**") will purchase and Li Gear, Inc., ("**Seller**") will sell any gears, gearboxes or gear-related products (the "Products"), including any pre-and post-sale services provided by **Seller** in connection with the sale of Products.  By ordering the Products, by accepting the Products, and/or by acknowledging the receipt of any quotation, **Purchaser** agrees that these Terms and Conditions shall govern and apply to the sale of the Products to **Purchaser**, regardless of any terms and conditions appearing on any purchase order or other forms submitted by **Purchaser** to **Seller**, given verbally by **Purchaser** to **Seller**, or appearing on **Purchaser's** website.  **Seller** expressly rejects any and all other additional, contrary or inconsistent terms and conditions.

## 2.    Acceptance/Inspection/Return

All orders for Products are subject to **Seller's** acceptance at **Seller's** office on these terms only.  **Purchaser** may not assign any quotation, proposal or order without **Seller's** prior written consent.  **Purchaser** shall not return any Products delivered to **Purchaser** without the written consent of, and upon terms agreed to by, **Seller**. **Purchaser** is advised to promptly inspect all Products upon receipt, and not to open any Product containers that show any signs of damage or tampering.  **Purchaser** waives any claim that Products are defective or non-confirming as a result of damages that occurred in delivery upon **Purchaser's** opening of the Product packaging.  **Purchaser** shall otherwise promptly notify **Seller** in writing of any defects or non-conformities in Products upon its receipt of the Products.  Failure to provide such written notice within five business days of **Purchaser's** receipt of the Products shall constitute a waiver of any right to reject the Products or to revoke **Purchaser's** acceptance of the Products.

See **Seller's** "Return Authorization Policy" for additional information on the return of Products.

## 3.    Price/Taxes

1.    All prices are subject to change by **Seller** without notice prior to **Seller's** acceptance of **Purchaser's** order.

2.    All prices are subject to change by **Seller** after **Seller's** acceptance of **Purchaser's** order pursuant to the terms and conditions of **Seller's** Quotation or any document incorporated therein or attached thereto.

 LI GEAR

3.  All prices are subject to change by **Seller** at any time in the event of any change in **Purchaser's** requirements, including a change in **Purchaser's** delivery, production, or packing requirements (quoted price including **Seller's** standard packing).

4.  All prices are exclusive of all federal, state, municipal, or other governmental entity's excise, sales, use, occupational, or any other taxes now imposed or hereafter becoming effective.

5.  **Purchaser** shall be responsible for collecting and/or paying any and all such taxes, whether or not they are stated in any invoice. **Purchaser** shall indemnify **Seller** from and against the imposition and payment of such taxes. **Seller** may separately bill **Purchaser** for any taxes not included in **Seller's** invoice and **Purchaser** shall pay said taxes, or in lieu thereof, shall provide **Seller** with a tax exemption certificate acceptable to taxing authorities. If **Seller** arranges for transportation of the Products from **Seller's** location, all costs and expenses relating thereto shall be paid by **Purchaser** to **Seller** upon presentation of **Seller's** invoice therefor.

6.  All prices for the Products are F.O.B. Chicago, Illinois, unless otherwise specified by **Seller**.

7.  Quoted pricing for Products excludes costs of shipping from Chicago to **Purchaser's** delivery location, taxes, and insurance.

8.  In special circumstances and upon mutual agreement between **Seller** and **Purchaser**, alternate shipping arrangements, including direct delivery to **Purchaser**, may be made at **Purchaser's** expense.

9.  If delivery or installation of the Products is delayed primarily due to the fault of **Purchaser**, all additional expenses incurred by **Seller** resulting from such delay shall be chargeable to and paid by **Purchaser**. Such expenses shall include charges for storage.

## 4.   Delivery and Freight Charges

1.  The shipping date(s) specified in **Seller's** Quotations are approximate only and may be affected by circumstances beyond **Seller's** control.

2.  The final shipping date(s) will be computed after **Seller** has receive all the data it requires to manufacture or engineer goods for **Purchaser** or after **Seller** accepts **Purchaser's** order, whichever is later.

3.  Every effort will be made to effect shipment within the time stated. However, **Seller** shall not be liable for any damages resulting directly or indirectly from delays in the manufacture, shipping, or delivery of goods caused by fire, flood, war, or riot, embargo, strikes, acts of God, acts of civil or military authorities, civil strife or insurrection, transportation delay, whether at place of manufacture



or elsewhere, fuel, power, or other energy or material shortages, or from delay by reason of any rule, regulation or order of any governmental authority, or from other causes beyond **Seller's** control.  In the event of such delay, the shipping date shall be extended for a reasonable length of time, but not less than the time actually lost by reason of the delay.

4.      Any change in **Purchaser's** requirements will require the <u>confirmation</u> or <u>revision</u> of the shipping date(s) by **Seller**.

5.      IN NO EVENT SHALL **SELLER** BE LIABLE FOR ANY INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OCCASIONED BY **SELLER'S** OR **SELLER'S** AGENTS' DELAYS, WHETHER OR NOT BEYOND **SELLER'S CONTROL**.

## 5.      Invoices/Payment Terms

**Seller** will issue **Purchaser** an invoice upon delivery of Products to **Purchaser** or to a location or carrier selected by **Purchaser** in accordance with Section 4.  Full payment is due within thirty (30) days of the invoice date.

## 6.      Tooling Fee

Certain orders may incur a tooling fee, which will be separately quoted.  If a tooling fee is required, it must be paid by **Purchaser** when the order is confirmed and production will not commence until the fee is paid. All tooling fees are non-refundable.

## 7.      Late Payment

In the event any amount due from **Purchaser** is not timely paid, such amount will accrue interest at a rate of 12% per annum.  In addition, **Purchaser** will pay all costs and expenses incurred in connection with the collection of such unpaid amount and interest, including reasonable attorneys' fees and court costs.

## 8.      Cancellation

In the event **Purchaser** requests **Seller** to stop work on or cancel an order or any part thereof, cancellation charges shall be paid to **Seller** as follows:

1.      Any work that has been completed or is scheduled to be completed within 30 days of the date **Purchaser** notifies **Seller** in writing to stop work or to cancel shall be invoiced to and be paid in full by **Purchaser**.



2.     **Purchaser** must pay the actual costs and overhead expenses, plus 20%, for work in process not covered by paragraph 8.1., and any materials and supplies procured or for which commitments have been made by **Seller** in connection with **Purchaser's** order.

3.     **Purchaser** shall promptly instruct **Seller** as to the disposition of the Product and **Seller** shall, if requested, hold the Product for **Purchaser's** account for a reasonable period of time.  All costs of storage, insurance, handling, boxing, and or any other costs in connection with such storage shall be borne by **Purchaser**.

In the event of cancellation, **Seller** shall also be entitled to all applicable remedies under the Uniform Commercial Code or other applicable law.

## 9.     Warranty

(a)     **Purchaser** acknowledges that **Seller** has no control over, and is and is not responsible for the manner in which the Products will be used or otherwise be applied by the **Purchaser**.  The **Purchaser** therefore agrees to assume all responsibility for any and all sums which the **Seller** and/or the **Purchaser** becomes obligated to pay because of bodily injury or property damages caused by or resulting directly or indirectly from the installation, maintenance, use, or operation of the Products, or the failure of the Products to comply with any safety laws or regulations.  **Purchaser** shall indemnify and hold **Seller** harmless from and against any and all actions, claims or demands arising out of or in any way connected with the installation, maintenance, use, or operation, of the Products, or the design, construction or composition of any item or items made or handled by the Products supplied hereunder, including any such actions, claims and demands based in whole or in part on the default or negligence of the **Seller**.

(b)     <u>**Limited Warranty**</u>.  **Seller** warrants that the Products sold hereunder will be free from defects in material and workmanship at the time of delivery. In the event that any defects in material or workmanship shall be discovered or become evident in the Products within one year from the date the Products are delivered to **Purchaser**, **Seller** shall repair or replace any defective Products or part thereof, or refund the purchase price thereof, as set forth herein, at **Seller's** sole and exclusive election, subject to the limitations set forth in these Terms.

All parts and/or components of Product(s) alleged to be defective shall at all times be subject to inspection by **Seller** and **Purchaser** shall not dispose of or otherwise modify or destroy the same before inspection by **Seller**. All such parts and/or components shall be returned by **Purchaser** to **Seller** upon **Seller's** request. Furthermore, all freight and related expenses for the return of any alleged defective parts/components and the shipment and delivery of replacement parts and components to **Purchaser** shall be for the account of **Purchaser** and **Purchaser** shall pay the same and/or reimburse **Seller** for the same to the extent paid/incurred by **Seller**.



(c) **Limitations.** SELLER'S WARRANTY HEREIN IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES OF SELLER AND THE MANUFACTURER OF THE PRODUCTS (COLLECTIVELY, "Manufacturing and Selling Parties"), WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE CREATED UNDER APPLICABLE LAW, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR USE, AND ANY WARRANTY BY SAMPLE. IN NO EVENT SHALL SELLER OR THE MANUFACTURING PARTIES BE LIABLE (AND PURCHASER SHALL NOT ASSERT ANY CLAIM) FOR SPECIAL, INCIDENTAL, COMPENSATORY OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS.

IN ADDITION, THIS WARRANTY SHALL NOT APPLY TO ANY PRODUCTS OR PORTIONS THEREOF WHICH HAVE BEEN SUBJECTED TO ABUSE, MISUSE, IMPROPER INSTALLATION, MAINTENANCE OR OPERATION (INCLUDING, BUT NOT LIMITED TO, THE MATTERS SET FORTH IN SUBPARAGRAPH 5(c) HEREOF), ELECTRICAL FAILURE OR ABNORMAL CONDITIONS; AND TO PRODUCTS THAT HAVE BEEN TAMPERED WITH, ALTERED, MODIFIED, REPAIRED OR REWORKED BY ANYONE NOT APPROVED BY SELLER. THIS WARRANTY SHALL NOT APPLY TO THE PORTIONS OF THE PRODUCTS NOT MANUFACTURED BY SELLER AND THE MANUFACTURING PARTIES. PURCHASER'S SOLE AND EXCLUSIVE REMEDIES UNDER THIS WARRANTY SHALL BE LIMITED, AT SELLER'S EXCLUSIVE DISCRETION, TO: (1) REPLACEMENT OF ANY DEFECTIVE PRODUCTS OR PART THEREOF; OR (2) REPAIR OF ANY DEFECTIVE PRODUCTS OR PART THEREOF; OR (3) RETURN OF THE PURCHASE PRICE FOR ANY DEFECTIVE PRODUCT OR PART THEREOF. IN NO EVENT SHALL SELLER'S LIABILTY HEREUNDER OR OTHERWISE ARISING RELATIVE TO THE SALE OF THE PRODUCTS EXCEED IN ANY EVENT OR UNDER ANY THEORY OR CAUSE OF ACTION, THE PURCHASE PRICE PAID BY PURCHASER TO SELLER FOR THE DEFECTIVE PRODUCT(S).

(d) **Only Warranty is Found in These Terms.** No agent, employee or representative of **Seller** (or any distributor, dealer or sales representative of **Seller**) has the authority to bind **Seller** to any affirmation, representation or warranty concerning the Products sold hereunder, and unless such affirmation, representation or warranty is specifically included in these Terms and Conditions, it will not form a part of the basis of these Terms and Conditions and shall in no way be binding upon the **Seller** or enforceable by **Purchaser**.

(e) **Limitations of Actions.** Any statute or law to the contrary notwithstanding, any actions to recover for any loss or damage arising out of, connected with, or resulting from any Quotation for or sale of Products, or from the performance or breach thereof must be commenced with one (1) year period after the cause of action accrues to **Purchaser**, unless otherwise extended by **Seller** in writing. It is expressly agreed that there are no warranties of future performance pertaining to the Products that are the subject of these Terms and Conditions that would extend such one-year period of limitation.



## 10.  Patent Infringement

**Seller** is not aware of any patents that might apply to the Products or their designs, and therefore, Seller makes no representation that the Products will not in and of themselves infringe any patent of the United States. Purchaser shall bear all responsibility for ensuring the Products do not infringe on any patent rights or know-how, and Purchaser shall defend, indemnify, and hold harmless Seller in the event a claim is asserted against either party for such infringement, regardless of whether such claim has any merit.

In no event will **Seller** and/or Selling Parties be liable for any patent infringement based on the use of the Products for purposes other than those for which they are sold by **Seller**. **Seller** makes no warranty against patent infringement resulting from portions of the Products made to **Purchaser's** specifications or the use of Products in combination with any other Products or in the practice of any process and if a claim, suit or action against the Manufacturing or Selling Parties is based thereon, **Purchaser** shall defend, indemnify and save **Seller** and the Manufacturing and Selling Parties harmless from and against any and all claims, losses or damages arising there from.

## 11.  Non-Circumvention

**Purchaser** agrees that for as long as it is doing business with **Seller** and for three (3) years after the delivery of and payment for the Products covered in **Purchaser's** final purchase, it will not: i) directly or indirectly, place orders with, or attempt to purchase goods from, **Seller's** suppliers for Products that **Seller** has sold to **Purchaser** or similar Products, or provided quotes for; or ii) direct potential purchasers to **Seller's** suppliers or assist potential purchasers to contact **Seller's** suppliers.  It is acknowledged and agreed that **Purchaser** will be deemed to be in material breach of this agreement if any entity controlled by, or under common control with **Purchaser**, violates this "non-circumvention" provision.  **Purchaser** understands that this restriction is necessary and reasonable due to the considerable time, effort and cost expended by **Seller** in identifying, vetting and cultivating a relationship with reliable suppliers, and establishing such suppliers as a valuable resource of **Seller**.  In the event **Purchaser** approaches **Seller's** suppliers, directly or indirectly, without **Seller's** consent or involvement, **Purchaser** agrees that it will have caused irreparable harm to **Seller's** business.

## 12.  Force Majeure

**Seller's** obligations hereunder are subject to, and **Seller** shall not be held responsible for, any delay or failure to make delivery of all or any part of the Products due to acts or circumstances beyond the control of **Seller**, including, but not limited to, labor difficulties, fires, casualties, accidents, acts of God, acts of terrorism, materials fluctuations in currency exchange rates, transportation difficulties, inability to obtain Products, materials, components or qualified labor sufficient to timely perform part or all of any obligation, or governmental regulations or actions.  In the event of the occurrence of any of the foregoing, at the option of **Seller**, **Seller** shall be excused from the performance hereunder or the performance of the **Seller** shall be correspondingly extended.



## 13. Miscellaneous Provisions

a.  These Terms and Conditions constitute the entire agreement between **Seller** and **Purchaser** as it relates to the purchase and sale of Products to **Purchaser** by **Seller** and the liability of the Manufacturing and Selling parties, and supersede any and all prior agreements, correspondence, quotations or understandings heretofore enforced between the parties relating to the subject matter hereof.

b.  If any term or condition or part of these Terms and Conditions is held invalid, the remaining terms and conditions hereof shall not be affected thereby.

c.  These Terms and Conditions may be modified, canceled or rescinded only by a written agreement by both parties executed by their duly authorized agents.

d.  All rights available to **Seller** under the Uniform Commercial Code except as specifically limited or excluded herein (even though not specifically enumerated), are reserved to **Seller** as remedies available in the event of default or breach by **Purchaser**.

e.  This agreement and any sale of Products to **Purchaser** shall be deemed to have been made in and governed by the substantive laws of the State of Illinois, without regard to choice-of-law provisions. **Seller** and **Purchaser** irrevocably consent to the exclusive jurisdiction of the courts of the State of Illinois (and the Federal courts having jurisdiction in the State of Illinois) for purposes of any judicial proceeding that may be instituted in connection with any matter arising out of or relating to these terms or any sales pursuant hereto.

f.  Any failure by either party to enforce at any time any term or condition hereof shall not be considered a waiver of such party's right thereafter to enforce the same or any other term or condition hereof.

g.  These Terms and Conditions shall be binding upon the successors and legal representatives of **Purchaser** and **Seller**.

h.  The Terms and Conditions and any agreement between the parties may not be assigned without the express written consent of the parties hereto. Any attempted assignment of rights or delegation of duties shall be void.

i.  Upon request by **Seller**, **Purchaser** shall provide **Seller** with all customer information and documentary and other assistance required to maintain strict compliance with federal, state and local laws. **Purchaser** shall take all actions as may be necessary to assure that no customer contravenes any laws or the provisions of any approvals/licenses or exemptions. **Seller** shall be relieved of all obligations to provide any Products, spare parts or technical data to **Purchaser** (or its customer(s)) if



**Purchaser** (or such customer) violates any laws, or if any approvals/licenses are suspended or revoked.

## 14.    Confidentiality

All drawings, designs, specifications, manuals and programs furnished to **Purchaser** by **Seller** shall remain the confidential and proprietary property of **Seller**. **Purchaser** hereby agrees that such information, except as may be found in the public domain, shall be held in strict confidence by **Purchaser** and shall not be disclosed or circulated by **Purchaser** to any third parties.  Copyright in all materials made available by **Seller** shall remain in **Seller** at all times.

## Contact Us

If you have any questions regarding this policy, please contact:

Li Gear, Inc.
Attn: Mr. Will Li, Vice President
1292 Lakeview Drive
Romeoville, IL 60446
Phone: 630.226.1688
Email: wli@ligear.com

# EXHIBIT "D"

| | |
|---|---|
| **From:** | Jake Foster <jfoster@kerrpumps.com> |
| **Sent:** | Thursday, May 22, 2014 10:31 AM |
| **To:** | Will Li |
| **Subject:** | Re: Li Gear - 1000 HP Quint Short Gearbox |

Will, It was great talking with you yesterday. Thanks for following up with the quote. We look forward to doing business with you in the present and in the future. I will email you the sales order tomorrow as I said yesterday when I get back into the office.

Thanks,

Jake

Sent from my iPhone

On May 22, 2014, at 7:58 AM, "Will Li" <wli@ligear.com> wrote:

> Hi Jake,
>
> It was good seeing you and Mark at the show yesterday. Glad we got to talk about your booth design and my upcoming trips overseas. I'll certainly share some of my pictures with you when I go to Japan later this year.
>
> I have attached our quotation for Kerr Pumps. It is for our 1000 HP quint, short gearbox. Li Gear wishes to support Kerr from the beginning of our relationship and have generously given you our volume pricing. As a new customer, we will ship our product to your door as a complimentary service.
>
> Below is our account and billing information.
>
> Li Gear
> 1292 Lakeview Dr
> Romeoville, IL 60446
> 630.226.168
>
> I'm glad we are starting this up and look forward to working together. We hope our industry leading support, quality, cost savings, and delivery increases your future sales.
>
> Thank you,
>
> Will
>
>
> Will Li
> Li Gear
> 1292 Lakeview Dr
> Romeoville, IL 60446
> T: 630.226.1688
> E: wli@ligear.com

1

Statement of Confidentiality.
The contents of this message and its attachments (if any) may be proprietary and/or confidential and are intended solely for the addressee(s) hereof. In addition, this message and its attachments (if any) may be subject to non-disclosure or confidentiality agreements or applicable legal privileges, including privileges protecting communications between attorneys or solicitors and their clients or the work product of attorneys and solicitors. If you are not the named addressee, or if this message has been addressed to you in error, please do not read, disclose, reproduce, distribute, disseminate or otherwise use this message or any of its attachments. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this message in error, please alert the sender; we also request that you immediately delete or destroy this message and its attachments (if any).

\<3483 – Kerr Pumps 1000 HP Quint Short Gearbox.pdf\>



Thursday, May 22, 2014

Kerr Pumps
2214 West 14th Street
Sulphur, OK 73086

Quotation: 3483 – Kerr Pumps 1000 HP Quint Short Gearbox

| Part No. | Description | Quantity | Price (USD) |
|----------|-------------|----------|-------------|
| TBD | GEARBOX, 1000 HP, QUINT, SHORT | 10+ | $14,000 |

Prices:      FOB Fort Worth, Texas. Quote valid for 15 days.

Terms:       Net 30 days.

Delivery:    16 week lead time. Lead time can improve if necessary.

Warranty:    See Li Gear's Standard Limited Warranty.

Sales Subject to Li Gear's Terms and Conditions of Sale. All sales and sales quotes, including this Quote, as well as all other estimates, proposals, and/or offers to sell, including samples, are subject to Li Gear's standard Terms and Conditions of Sale, and its standard Warranty, which can be found at our company website or by requesting a copy from the Company. All acceptances of Quotes and/or Purchase Orders are deemed to have included, by reference to this Quote, Li Gear's Standard Terms and Conditions.

Statement of Confidentiality. The contents of this message and its attachments (if any) may be proprietary and/or confidential and are intended solely for the addressee(s) hereof. In addition, this message and its attachments (if any) may be subject to non-disclosure or confidentiality agreements or applicable legal privileges, including privileges protecting communications between attorneys or solicitors and their clients or the work product of attorneys or solicitors. If you are not the named addressee, or if this message has been addressed to you in error, please do not read, disclose, reproduce, distribute, disseminate or otherwise use this message or any of its attachments. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this message in error, please alert the sender; we also request that you immediately delete or destroy this message and its attachments (if any).

Li Gear, Inc. | www.ligear.com
1292 Lakeview Drive, Romeoville, IL 60466
Tel: 630.226.1688 | Fax: 630.226.8988

(5/11)

# EXHIBIT "E"

**Ed Underhill**

| | |
|---|---|
| **From:** | Jake Foster <jfoster@kerrpumps.com> |
| **Sent:** | Friday, May 23, 2014 10:50 AM |
| **To:** | WLI@LIGEAR.COM |
| **Subject:** | Here you go |
| **Attachments:** | Purchase Order_20140523_104901AM.pdf |

Here is the PO. I appreciate it sir.

Thanks,

Jake



**KERR PUMPS**
P.O. BOX 735
Sulphur OK  73086
USA

# PURCHASE ORDER
Original

| | |
|---|---|
| **Order No.:** | 38162 |
| **Order Date:** | 05/23/14 |
| **Due Date:** | 08/29/14 |
| **Vendor No.:** | V03034 |
| **Vendor Ref. No.:** | |
| **Page No.:** | Page  1  of  1 |

| PAY TO | OUR SHIP TO | TOTAL DUE |
|---|---|---|
| LI GEAR<br>1292 LAKEVIEW DRIVE<br>ROMEOVILLE IL  60466<br>USA | KERR PUMPS<br>2214 WEST 14TH STREET<br>SULPHUR OK  73086<br>USA | **$ 140,000.00**<br>by 08/29/14 |

**Phone:**
**Fax:**                        **Ship Via:**
**Email**                       **Terms:**        NET30          **Cancelled:**        No

| Item No. | Description | Quantity | Discount % | Unit Price | Total |
|---|---|---|---|---|---|
| B000281-A | QWS1000S GEAR REDUCER COMPLETE w/DRIVE COMPANION FLANGE - Assembled, Tested, Primered | 10.000 | 0.000 | $ 14,000.00 | $ 140,000.00 |

| | |
|---|---|
| Subtotal | $ 140,000.00 |
| Discount | |
| Shipping | |
| Tax | |
| **Total Order Value** | **$ 140,000.00** |

**Remarks:**   2 SHIPS FROM STOCK

MATERIAL CERTIFICATIONS REQUIRED

## ORDER TERMS AND CONDITIONS

1. Invoices must have the same prices, and terms or authorization for changes must be received in writing from our company prior to shipping.
2. Goods not in accordance with specifications will be rejected and held at vendor's risk for disposal. Vendor must pay freight on all rejects.
3. We reserve the right to cancel all or part of this order if it is not delivered within the specified timeframe.
4. Packing slips must accompany all shipments.
5. By accepting this order, the vendor guarantees that all merchandise shipped under this order complies with all the laws and regulations of the federal and state government.
6. Backorders that are less than a minimum freight shipment must be prepaid.
7. In the event of interruption to our business, in whole or in part, for reasons of fire, flood, wind storm, earthquake, war, strike, embargo, acts of God, governmental action, or any causes beyond our control, we reserve the right to cancel the undelivered part of this order.
8. Acceptance of this purchase order or shipment of any part of it constitutes an agreement to all of its specifications as to terms, delivery

| From: | Will Li <wli@ligear.com> |
|-------|--------------------------|
| Sent: | Wednesday, May 28, 2014 1:50 PM |
| Subject: | Li Gear - QWS 1000S Gearbox Dimensions |

Jake,

These are the dimensions for the QWS 1000S gearbox when it is installed on the pump and you are looking at it from the side of the pump, directly at the gearbox cover.

Width: 32.75", left to right
Height: 26.25", top to bottom from one edge to the other
Depth: 22.15", input companion flange to output flange

For our gearbox, the gear set is made of high strength alloy steel, AGMA grade 2 material. The gear is machined from a one-piece, solid forging, induction hardened, ground to a minimum of AGMA Q10, and has profile and lead modification. We usually get AGMA Q11 on these gears although the standard drawing only requires Q10. We are the only ones to machine the gear out of a forging rather than fabricating several pieces together and also the only ones that do profile and lead modification as that is not required either. Let me know if you have any questions.

Thanks,

Will


Will Li
Li Gear
1292 Lakeview Dr
Romeoville, IL 60446
T: 630.226.1688
E: wli@ligear.com

The contents of this message and its attachments (if any) may be proprietary and/or confidential and are intended solely for the addressee(s) hereof. In addition, this message and its attachments (if any) may be subject to protection under any agreement or applicable legal privileges, including privileges protecting communications between attorneys or solicitors and their clients or the work product of attorneys and solicitors. If you are not the named addressee, or if this message has been addressed to you in error, please do not read, disclose, reproduce, distribute, disseminate or otherwise use this message or any of its attachments. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this message in error, please alert the sender; we also request that you immediately delete this message and its attachments (if any).

# EXHIBIT "F"



Li Gear, Inc.
Romeoville, IL 60446-3901
1292 Lakeview Drive
T:  630.226.1688
www.ligear.com

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/11/2014 | 800501 |

Bill To:

Kerr Pumps
P.O. BOX 735
Sulphur OK 73086

| Due Date | Purchase Order # | Terms |
|----------|------------------|-------|
| 12/11/2014 | 38162 | Net 30 |

| Quantity | Item | Description | Unit Price | Amount |
|----------|------|-------------|------------|--------|
| 8 | 193 439 | B000281-A - QWS 1000S Gearbox | 14,000.00 | 112,000.00 |
| | | | **Total:** | $112,000.00 |

**Christina Patterson**

| | |
|---|---|
| **From:** | Will Li <wli@ligear.com> |
| **Sent:** | Monday, December 22, 2014 4:05 PM |
| **Subject:** | Re: Li Gear Invoice - 800501 |

Thank you Micalyn! You can mail it the normal way that's easiest for you.

Will

On Dec 22, 2014, at 2:33 PM, Micalyn Wheelwright <MW@kerrpumps.com> wrote:

> I got the check signed. Please provide account number and carrier if you would like check overnighted.
>
> **From:** Will Li [mailto:wli@ligear.com]
> **Sent:** Monday, November 24, 2014 3:52 PM
> **To:** Micalyn Wheelwright
> **Subject:** Li Gear Invoice - 800501
>
> Hello Micalyn,
>
> Here is our invoice 800501. This was delivered about 2 weeks ago, hence the invoice date. Let me know if you have any questions about issuing payment on time.
>
> Thank you and hope you have a great upcoming Thanksgiving!
>
> Will
>
> Will Li
> Li Gear
> 1292 Lakeview Dr
> Romeoville, IL 60446
> T: 630.226.1688
> E: wli@ligear.com

Statement of Confidentiality.
The contents of this message and its attachments (if any) may be proprietary and/or confidential and are intended solely for the addressee(s) hereof. In addition, this message and its attachments of any may be subject to non-disclosure or confidentiality agreement or applicable legal privileges, including privileged protecting communications between attorneys or solicitors and their clients. If you are not the named addressee, or if this message has been addressed to you in error, please do not read, disclose, reproduce, distribute, or otherwise use this message or any of its attachments. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this message in error, please alert the sender, we also request that you immediately delete or destroy this message and its attachments (if any).

1



EXHIBIT "3"

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Settlement Agreement"), dated as of April 24 , 2017, is entered into by and between, LI GEAR, INC., an Illinois corporation ("Plaintiff"), and, KERR MACHINE CO., an Oklahoma corporation ("Defendant").

**WHEREAS,** on or about September 18, 2014, Defendant submitted Purchase Order #38922 (the "Purchase Order"), a true and correct copy of which is attached hereto as Exhibit "A," for the purchase of 45 gearboxes (the "subject Gearboxes") at a unit price of $14,000 for a Total Order price of $630,000, and;

**WHEREAS,** Defendant asserts and Plaintiff disputes that said Purchase Order was not intended by Defendant to be an actual purchase order but instead was intended to be a forecast of the number of gearboxes it would likely order in the near future, and;

**WHEREAS,** Plaintiff asserts and Defendant disputes that said Purchase Order was based on Plaintiff's previous Quote (the "Quote') for the purchase of similar gearboxes, which incorporated by reference Plaintiff's Terms and Conditions of sale, a true and correct copy of which is attached hereto as Exhibit "B," and;

**WHEREAS,** Plaintiff asserts and Defendant disputes that Plaintiff accepted Purchase Order and undertook the manufacture of the Subject Gearboxes in accordance with the Purchase Order, and;

**WHEREAS,** Defendant disputes that Plaintiff began the manufacture of any of the Subject Gearboxes prior to Defendant notifying Plaintiff that it was cancelling the Purchase Order, and;

**WHEREAS,** Defendant notified Plaintiff that it was cancelling said Purchase Order and thereafter refused to agree to Plaintiff shipping any of the subject Gearboxes to Defendant, and;

**WHEREAS,** Plaintiff thereafter made repeated requests for Defendant to take delivery of the Subject Gearboxes, and on February 25, 2015 issued Invoice #800540 to Kerr in the amount of $630,000, and;

**WHEREAS,** Defendant did not agree to take delivery of the Subject Gearboxes and notified Plaintiff that it did not agree that it was obligated to take delivery of the Subject Gearboxes and therefore Defendant did not pay to Plaintiff any of the amount invoiced, and

**WHEREAS,** on or about April 26, 2016, Plaintiff filed its Complaint in the United States District Court for the Northern District of Illinois, in the case titled, ***Li Gear, Inc., v. Kerr Machine Co.,*** Case No. 16-CV-04657 (hereinafter the "Lawsuit"), seeking judgment in its favor against the Defendant in the amount of $630,000, plus pre-judgment interest on the principal amount due as and from May 29, 2015 and attorneys' fees and costs; and;

**WHEREAS,** Defendant filed an answer denying that it was liable to Plaintiff; and;

2

**WHEREAS,** Plaintiff and Defendant now mutually desire that all disputes existing between them be compromised and settled upon the terms and conditions as set forth herein.

**NOW, THEREFORE,** in consideration of the mutual promises, covenants and agreements hereinafter set forth, and each act to be performed hereunder, the parties hereto agree as follows:

1.    **<u>Defendant Shall Accept Delivery of the Subject Gearboxes</u>.**

    (a)    <u>Delivery Schedule and Payment for First Twenty (20) Gearboxes</u>. On or before April 25, 2017, Defendant shall wire transfer to the escrow account of its counsel of record the amount of $280,000, as payment for the first twenty (20) of the Subject Gearboxes, and Defendant's counsel shall provide written confirmation of the receipt of said funds to Plaintiff's counsel of record on the same or following day. On or before May 1, 2017, Plaintiff shall deliver to Defendant's facility in Sulphur, Oklahoma, the first twenty (20) of the Subject Gearboxes, subject only to the material terms of Plaintiff's standard Terms and Conditions of Sale identified in Paragraph 2 below. The delivery of such Gearboxes shall be F.O.B., Romeoville, Illinois. Defendant shall be permitted five business (5) days from the date of delivery to fully inspect and accept the Subject Gearboxes. Defendant's failure to reject by written notice delivered through counsel of record any or all of the first twenty (20) gearboxes within the five-day inspection period shall constitute a waiver of the right

to reject or revoke acceptance and shall be considered an acceptance of same. On or before May 9, 2017, Defendant's counsel of record shall wire transfer to Plaintiff's counsel of record the $280,000 payment for the first twenty (20) of the Subject Gearboxes.

(b)     <u>Delivery Schedule and Payment for the Remaining Twenty-Five (25) Gearboxes.</u>  Plaintiff shall deliver and Defendant shall pay for the remaining twenty five (25) of the Subject Gearboxes in monthly shipments and payments in quantities of five (5) gearboxes per month beginning in June, 2017 and ending in October, 2017 in the identical manner for delivery and payment set forth in sub-paragraph (a) above, beginning with Defendant's payment for five (5) of the Subject Gearboxes ($70,000) on or before June 7th, and Plaintiff's delivery of five (5) gearboxes to be made no later than June 14th.  The monthly payments of $70,000 shall thereafter be made no later than the 7th of each month with the delivery of five (5) gearboxes to be made no later than the 14th of each month.

2.     **Plaintiff's Terms and Conditions of Sale Shall Apply to the Sale of the Subject Gearboxes**.  Defendant acknowledges and agrees that its purchase of the Subject Gear boxes are subject to Li Gear's standard Terms and Conditions of Sale, including its Limited Warranty..

3.     **Dismissal of the Lawsuit**.  Following the delivery and payment of the First twenty (20) of the Subject Gearboxes, Plaintiff and Defendant shall cause a Stipulation to

Dismiss in substantially the form attached hereto as Exhibit "C" (the "Stipulation to Dismiss") to be promptly filed and an Order dismissing the Lawsuit and all claims asserted therein with prejudice be filed, each party to bear its own costs, but expressly granting the Court the right to retain jurisdiction over the parties to enforce the terms of the Settlement Agreement.

4. **Default in Obligations**. In the event Defendant fails to make any of the scheduled monthly payments set forth in Paragraph 1 herein, or otherwise breaches any other obligation under this Settlement Agreement, Plaintiff, at its option, shall have the right to reinstate the Lawsuit with respect to all Subject Gearboxes not accepted and/or paid for, and assert all claims with respect to such gearboxes and seek all damages it would have had the right to assert for such gearboxes and/or all damages in the Lawsuit had it not been voluntarily dismissed. Likewise, Defendant shall be entitled to assert any and all defenses and claims against Plaintiff with respect to the Subject Gearboxes.

5. **Release by Plaintiff**. Upon the completion of Defendant's obligations undertaken pursuant to Paragraph 1 of this Agreement, Plaintiff, Li Gear, Inc., for itself and each of its officers, directors, shareholders, agents, principals, assigns, related and affiliated entities, and its successors and assigns, releases and forever discharges Defendant, Kerr Machine Co., its affiliates, parents, officers, directors, shareholders, legal representatives, employees, successors, related companies, assigns, and any third parties ("the Kerr Released Parties") of and from any and all claims, actions, causes of action, demands, rights and damages, of whatsoever kind or nature that have accrued as of the date of this Settlement Agreement, whether known or unknown, that they now have or might have against the Kerr Released Parties, including, but not limited to, claims arising under the Purchase Order, claims arising under any and all agreements

5

for the purchase and sale of gearboxes, and claims for any unpaid invoices, including any and all claims asserted, or which could have been asserted, in the Lawsuit.

6. **Release by the Defendant**. Upon the completion of Plaintiff's obligations undertaken pursuant to Paragraph 1 of this Agreement, Defendant, Kerr Machine Co., for itself and each of its officers, directors, shareholders, agents, principals, assigns, related and affiliated entities, and its successors and assigns, releases and forever discharges Plaintiff Li Gear, its affiliates, parents, officers, directors, shareholders, legal representatives, employees, successors, related companies, assigns, and any third parties (the "Li Gear Released Parties") of and from any and all claims, actions, causes of action, demands, rights and damages of whatsoever kind or nature that have accrued as of the date of this Settlement Agreement, whether known or unknown, that they now have or might have against the Li Gear Released Parties, including, but not limited to, claims arising under the Purchase Order, claims arising under any and all agreements for the purchase and sale of gearboxes, and claims asserted, or which could have been asserted, in the Lawsuit.

7. **Binding Effect**. This Settlement Agreement, and all covenants and releases set forth herein, shall be binding upon and shall inure to the benefit of the parties, their legal successors, heirs, assigns, partners, representatives, executors, administrators, agents, attorneys, officers, directors and shareholders.

8. **Choice of Law and Venue**. The laws of the State of Illinois shall govern the interpretation and effect of this Settlement Agreement. The Defendant hereby submits itself to the personal jurisdiction of the Federal and State Courts located in Cook County, Illinois for the

purposes of this Settlement Agreement only, and the parties agree that all legal proceedings regarding enforcement of this Settlement Agreement shall only be instituted in the U.S. District Court, Northern District of Illinois, or the courts of the State of Illinois, Cook County.

9.    **Legal Expenses**.  In the event that either party fails to comply with the provisions of this Settlement Agreement, in addition to the remedies as provided herein and Plaintiff's standard Terms and Conditions of Sale, the non-defaulting party shall be entitled to recover reasonable attorneys' fees and all other reasonable costs and expenses incurred in connection with the enforcement of this Settlement Agreement, including without limitation, expert witness fees, court reporter fees and collection expenses.

10.    **Severability**.  Should any portion or clause of this Settlement Agreement be found to be invalid, illegal, void, voidable or unenforceable for any reason whatsoever, this Settlement Agreement shall be read as if it did not contain said portion or clause.  The parties hereto intend for any such invalid portion or clause to be severable from the remainder.  Any such clause or portion and its severance shall not affect the validity or effect of the remaining provisions of this Settlement Agreement.

11.    **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, and such counterparts shall together constitute one and the same Settlement Agreement.

12. **Gender and Number**. In this document, where the context so requires, the masculine, feminine or neuter gender shall be deemed to include each other, and the singular to include the plural.

13. **Section Headings**. The captions, subject, section and paragraph headings in this Settlement Agreement are included for convenience and reference only. They do not form a part hereof, and do not in any way codify, interpret, or reflect the intent of the parties. Said headings shall not be used to construe or interpret any provision of this Settlement Agreement.

14. **Right to Consult with Attorney, Terms Understood**. The parties hereto acknowledge that each has read this Settlement Agreement; that each fully understands its rights, privileges and duties under this Settlement Agreement; and that each enters into this Settlement Agreement freely and voluntarily. Each party further acknowledges that each has had the opportunity to consult with, and has indeed actually consulted with and had the benefit of, an attorney of its choice to explain the terms of this Settlement Agreement, and the attached Agreed Order, and the consequences of signing them.

15. **Entire Settlement Agreement**. Except as otherwise provided herein, the undersigned each acknowledges and represents that no promise or representation not contained in this Settlement Agreement has been made to them and that this Settlement Agreement contains the entire understanding between the parties and contains all terms and conditions pertaining to the within dispute and release. Notwithstanding anything to the contrary herein, the provisions of Plaintiff's standard Terms and Conditions of Sale shall continue in effect and be binding upon the parties hereto. Otherwise the rights and remedies of the parties shall be

cumulative. Any prior written or oral negotiations not contained in this Settlement Agreement are of no force or effect whatsoever. In executing this Settlement Agreement, the parties have not and do not rely on any statements, inducements, promises, or representations made by the other party or their agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Settlement Agreement, except those specifically set forth in this Settlement Agreement.

16. **Modifications**. No change in, addition to, or erasure of a printed portion of this Settlement Agreement (except the filling in of specific blank spaces and lines) shall be valid or binding upon any party hereto and no verbal Settlement Agreement of any nature relating to the subject matter of this Settlement Agreement or to any relationship between the parties will be considered valid or enforceable. This Settlement Agreement may not be superseded, modified or amended orally and no modification, waiver or amendment shall be valid unless in writing and signed by the party against whom the same is sought to be enforced.

17. **No Presumption against Drafting Party**. This Settlement Agreement and the provisions contained herein shall not be construed or interpreted for or against any party hereto because said party drafted or caused the party's legal representative to draft any of its provisions. This Settlement Agreement shall be construed without reference to the identity of the party or parties preparing the same, it being expressly understood and agreed that the parties hereto participated equally or had equal opportunity to participate in the drafting thereof.

18. **Waiver**. The failure of any party to enforce any provision of this Settlement Agreement shall not be construed as a waiver of any such provision, or prevent such party

thereafter from enforcing such provision, or prevent such party thereafter from enforcing such provision or any other provision of this Settlement Agreement. The rights and remedies granted all parties herein are cumulative and the election of one right or remedy shall not constitute a waiver of such party's right to assert all other legal remedies available under this Settlement Agreement, or otherwise provided by law.

19. **Authority to Enter Into Settlement Agreement**. Each party signing the Settlement Agreement warrants that he or she has authority to sign this Settlement Agreement and to bind the party indicated below to observe and perform its terms and conditions. Moreover, each party represents and warrants that it/he/she has not assigned or otherwise transferred to any third-party any claim released or intended to be released herein.

20. **Execution of Further Documents**. The parties acknowledge that they will cooperate with each other in carrying out the provisions of this Settlement Agreement and the Stipulation to Dismiss, including the execution of necessary documents and providing necessary information, without undue delay or expense. In the event any party fails or refuses to comply with this paragraph, said party shall reimburse the other party for any expenses that as a result of this failure become reasonably necessary to carry out this Settlement Agreement, even if formal legal action is not commenced.

*[Signature Page to Follow Herewith]*

**WHEREAS,** the parties hereto have executed this Settlement Agreement as of the _24_ day of April, 2017.

**LI GEAR, INC.**

By:_____

Title:_____

Date:_____

**KERR MACHINE CO.**

By:_Mark Nowell_    _Mark Nowell_

Title:_GM_

Date:_4/24/17_

N:\SYS08\12700\Agmts\10020 Settlement Agreement Final.docx

11

# KERR PUMPS
**P U M P S**

KERR PUMPS
P.O. BOX 735
Sulphur OK  73086
USA

# PURCHASE
# ORDER    Original

| | |
|---|---|
| **Order No.:** | 38922 |
| **Order Date:** | 09/18/14 |
| **Due Date:** | 09/18/14 |
| **Vendor No.:** | V03034 |
| **Vendor Ref. No.:** | |
| **Page No.:** | Page   1  of  1 |

| PAY TO | OUR SHIP TO | TOTAL DUE |
|---|---|---|
| LI GEAR<br>1292 LAKEVIEW DRIVE<br>ROMEOVILLE IL  60446<br>USA | KERR PUMPS<br>2214 WEST 14TH STREET<br>SULPHUR OK  73086<br>USA | **$ 630,000.00**<br>by 09/18/14 |

Phone:
Fax:
Email

Ship Via:
Terms:      NET30

Cancelled:      No

| Item No. | Description | Quantity | Discount % | Unit Price | Total |
|---|---|---|---|---|---|
| B000281-A | QWS1000S GEAR REDUCER COMPLETE w/DRIVE COMPANION FLANGE - Assembled, Tested, Primered | 15.000 | 0.000 | $ 14,000.00 | $ 210,000.00 |
| B000281-A | GEAR REDUCER COMPLETE w/DRIVE COMPANION FLANGE - Assembled, Tested, Primered | 15.000 | 0.000 | $ 14,000.00 | $ 210,000.00 |
| B000281-A | GEAR REDUCER COMPLETE w/DRIVE COMPANION FLANGE - Assembled, Tested, Primered | 15.000 | 0.000 | $ 14,000.00 | $ 210,000.00 |

| | |
|---|---|
| Subtotal | $ 630,000.00 |
| Discount | |
| Shipping | |
| Tax | |
| **Total Order Value** | **$ 630,000.00** |

**Remarks:**   I need 15 a month for three months

MATERIAL CERTIFICATIONS REQUIRED

## ORDER TERMS AND CONDITIONS

1. Invoices must have the same prices, and terms or authorization for changes must be received in writing from our company prior to shipping.
2. Goods not in accordance with specifications will be rejected and held at vendor's risk for disposal. Vendor must pay freight on all rejects.
3. We reserve the right to cancel all or part of this order if it is not delivered within the specified timeframe.
4. Packing slips must accompany all shipments.
5. By accepting this order, the vendor guarantees that all merchandise shipped under this order complies with all the laws and regulations of the federal and state government.
6. Backorders that are less than a minimum freight shipment must be prepaid.
7. In the event of interruption to our business, in whole or in part, for reasons of fire, flood, wind storm, earthquake, war, strike, embargo, acts of God, governmental action, or any causes beyond our control, we reserve the right to cancel the undelivered part of this order.
8. Acceptance of this purchase order or shipment of any part of it constitutes an agreement to all of its specifications as to terms, delivery



**EXHIBIT**

"1"

**PLAINTIFF'S EXHIBIT**

"A"

# Li Gear, Inc.
# <u>Terms and Conditions</u>

## 1.    General

These Terms and Conditions set forth the terms and conditions pursuant to which the purchaser ("**Purchaser**") will purchase and Li Gear, Inc., ("**Seller**") will sell any gears, gearboxes or gear-related products (the "Products"), including any pre-and post-sale services provided by **Seller** in connection with the sale of Products.  By ordering the Products, by accepting the Products, and/or by acknowledging the receipt of any quotation, **Purchaser** agrees that these Terms and Conditions shall govern and apply to the sale of the Products to **Purchaser**, regardless of any terms and conditions appearing on any purchase order or other forms submitted by **Purchaser** to **Seller**, given verbally by **Purchaser** to **Seller**, or appearing on **Purchaser's** website.  **Seller** expressly rejects any and all other additional, contrary or inconsistent terms and conditions.

## 2.    Acceptance/Inspection/Return

All orders for Products are subject to **Seller's** acceptance at **Seller's** office on these terms only.  **Purchaser** may not assign any quotation, proposal or order without **Seller's** prior written consent.  **Purchaser** shall not return any Products delivered to **Purchaser** without the written consent of, and upon terms agreed to by, **Seller**. **Purchaser** is advised to promptly inspect all Products upon receipt, and not to open any Product containers that show any signs of damage or tampering.  **Purchaser** waives any claim that Products are defective or non-confirming as a result of damages that occurred in delivery upon **Purchaser's** opening of the Product packaging.  **Purchaser** shall otherwise promptly notify **Seller** in writing of any defects or non-conformities in Products upon its receipt of the Products.  Failure to provide such written notice within five business days of **Purchaser's** receipt of the Products shall constitute a waiver of any right to reject the Products or to revoke **Purchaser's** acceptance of the Products.

See **Seller's** "Return Authorization Policy" for additional information on the return of Products.

## 3.    Price/Taxes

1.    All prices are subject to change by **Seller** without notice prior to **Seller's** acceptance of **Purchaser's** order.

2.    All prices are subject to change by **Seller** after **Seller's** acceptance of **Purchaser's** order pursuant to the terms and conditions of **Seller's** Quotation or any document incorporated therein or attached thereto.



EXHIBIT

"2"

3. All prices are subject to change by **Seller** at any time in the event of any change in **Purchaser's** requirements, including a change in **Purchaser's** delivery, production, or packing requirements (quoted price including **Seller's** standard packing).

4. All prices are exclusive of all federal, state, municipal, or other governmental entity's excise, sales, use, occupational, or any other taxes now imposed or hereafter becoming effective.

5. **Purchaser** shall be responsible for collecting and/or paying any and all such taxes, whether or not they are stated in any invoice. **Purchaser** shall indemnify **Seller** from and against the imposition and payment of such taxes. **Seller** may separately bill **Purchaser** for any taxes not included in **Seller's** invoice and **Purchaser** shall pay said taxes, or in lieu thereof, shall provide **Seller** with a tax exemption certificate acceptable to taxing authorities. If **Seller** arranges for transportation of the Products from **Seller's** location, all costs and expenses relating thereto shall be paid by **Purchaser** to **Seller** upon presentation of **Seller's** invoice therefor.

6. All prices for the Products are F.O.B. Chicago, Illinois, unless otherwise specified by **Seller**.

7. Quoted pricing for Products excludes costs of shipping from Chicago to **Purchaser's** delivery location, taxes, and insurance.

8. In special circumstances and upon mutual agreement between **Seller** and **Purchaser**, alternate shipping arrangements, including direct delivery to **Purchaser**, may be made at **Purchaser's** expense.

9. If delivery or installation of the Products is delayed primarily due to the fault of **Purchaser**, all additional expenses incurred by **Seller** resulting from such delay shall be chargeable to and paid by **Purchaser**. Such expenses shall include charges for storage.

## 4. Delivery and Freight Charges

1. The shipping date(s) specified in **Seller's** Quotations are <u>approximate</u> only and may be affected by circumstances beyond **Seller's** control.

2. The final shipping date(s) will be computed after **Seller** has receive all the data it requires to manufacture or engineer goods for **Purchaser** or after **Seller** accepts **Purchaser's** order, whichever is later.

3. Every effort will be made to effect shipment within the time stated. However, **Seller** shall not be liable for any damages resulting directly or indirectly from delays in the manufacture, shipping, or delivery of goods caused by fire, flood, war, or riot, embargo, strikes, acts of God, acts of civil or military authorities, civil strife or insurrection, transportation delay, whether at place of manufacture or elsewhere, fuel, power, or other energy or material shortages, or from delay by reason of any rule, regulation or order of any governmental authority, or from other causes beyond **Seller's** control. In

the event of such delay, the shipping date shall be extended for a reasonable length of time, but not less than the time actually lost by reason of the delay.

4. Any change in **Purchaser's** requirements will require the <u>confirmation</u> or <u>revision</u> of the shipping date(s) by **Seller**.

5. IN NO EVENT SHALL **SELLER** BE LIABLE FOR ANY INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OCCASIONED BY **SELLER'S** OR **SELLER'S** AGENTS' DELAYS, WHETHER OR NOT BEYOND **SELLER'S CONTROL**.

## 5. Invoices/Payment Terms

**Seller** will issue **Purchaser** an invoice upon delivery of Products to **Purchaser** or to a location or carrier selected by **Purchaser** in accordance with Section 4. Full payment is due within thirty (30) days of the invoice date.

## 6. Tooling Fee

Certain orders may incur a tooling fee, which will be separately quoted. If a tooling fee is required, it must be paid by **Purchaser** when the order is confirmed and production will not commence until the fee is paid. All tooling fees are non-refundable.

## 7. Late Payment

In the event any amount due from **Purchaser** is not timely paid, such amount will accrue interest at a rate of 12% per annum. In addition, **Purchaser** will pay all costs and expenses incurred in connection with the collection of such unpaid amount and interest, including reasonable attorneys' fees and court costs.

## 8. Cancellation

In the event **Purchaser** requests **Seller** to stop work on or cancel an order or any part thereof, cancellation charges shall be paid to **Seller** as follows:

1. Any work that has been completed or is scheduled to be completed within 30 days of the date **Purchaser** notifies **Seller** in writing to stop work or to cancel shall be invoiced to and be paid in full by **Purchaser**.

2. **Purchaser** must pay the actual costs and overhead expenses, plus 20%, for work in process not covered by paragraph 8.1, and any materials and supplies procured or for which commitments have been made by **Seller** in connection with **Purchaser's** order.

3.  **Purchaser** shall promptly instruct **Seller** as to the disposition of the Product and **Seller** shall, if requested, hold the Product for **Purchaser's** account for a reasonable period of time. All costs of storage, insurance, handling, boxing, and or any other costs in connection with such storage shall be borne by **Purchaser**.

In the event of cancellation, **Seller** shall also be entitled to all applicable remedies under the Uniform Commercial Code or other applicable law.

## 9.  Warranty

(a)  **Purchaser** acknowledges that **Seller** has no control over, and is and is not responsible for the manner in which the Products will be used or otherwise be applied by the **Purchaser**. The **Purchaser** therefore agrees to assume all responsibility for any and all sums which the **Seller** and/or the **Purchaser** becomes obligated to pay because of bodily injury or property damages caused by or resulting directly or indirectly from the installation, maintenance, use, or operation of the Products, or the failure of the Products to comply with any safety laws or regulations. **Purchaser** shall indemnify and hold **Seller** harmless from and against any and all actions, claims or demands arising out of or in any way connected with the installation, maintenance, use, or operation, of the Products, or the design, construction or composition of any item or items made or handled by the Products supplied hereunder, including any such actions, claims and demands based in whole or in part on the default or negligence of the **Seller**.

(b)  Limited Warranty. **Seller** warrants that the Products sold hereunder will be free from defects in material and workmanship at the time of delivery. In the event that any defects in material or workmanship shall be discovered or become evident in the Products within one year from the date the Products are delivered to **Purchaser**, **Seller** shall repair or replace any defective Products or part thereof, or refund the purchase price thereof, as set forth herein, at **Seller's** sole and exclusive election, subject to the limitations set forth in these Terms.

All parts and/or components of Product(s) alleged to be defective shall at all times be subject to inspection by **Seller** and **Purchaser** shall not dispose of or otherwise modify or destroy the same before inspection by **Seller**. All such parts and/or components shall be returned by **Purchaser** to **Seller** upon **Seller's** request. Furthermore, all freight and related expenses for the return of any alleged defective parts/components and the shipment and delivery of replacement parts and components to **Purchaser** shall be for the account of **Purchaser** and **Purchaser** shall pay the same and/or reimburse **Seller** for the same to the extent paid/incurred by **Seller**.

(c)  Limitations. SELLER'S WARRANTY HEREIN IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES OF SELLER AND THE MANUFACTURER OF THE PRODUCTS (COLLECTIVELY, "Manufacturing and Selling Parties"), WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE CREATED UNDER APPLICABLE LAW, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR USE, AND ANY WARRANTY BY SAMPLE. IN NO EVENT SHALL SELLER OR

THE MANUFACTURING PARTIES BE LIABLE (AND PURCHASER SHALL NOT ASSERT ANY CLAIM) FOR SPECIAL, INCIDENTAL, COMPENSATORY OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS.

IN ADDITION, THIS WARRANTY SHALL NOT APPLY TO ANY PRODUCTS OR PORTIONS THEREOF WHICH HAVE BEEN SUBJECTED TO ABUSE, MISUSE, IMPROPER INSTALLATION, MAINTENANCE OR OPERATION (INCLUDING, BUT NOT LIMITED TO, THE MATTERS SET FORTH IN SUBPARAGRAPH 5(c) HEREOF), ELECTRICAL FAILURE OR ABNORMAL CONDITIONS; AND TO PRODUCTS THAT HAVE BEEN TAMPERED WITH, ALTERED, MODIFIED, REPAIRED OR REWORKED BY ANYONE NOT APPROVED BY SELLER. THIS WARRANTY SHALL NOT APPLY TO THE PORTIONS OF THE PRODUCTS NOT MANUFACTURED BY SELLER AND THE MANUFACTURING PARTIES. PURCHASER'S SOLE AND EXCLUSIVE REMEDIES UNDER THIS WARRANTY SHALL BE LIMITED, AT SELLER'S EXCLUSIVE DISCRETION, TO: (1) REPLACEMENT OF ANY DEFECTIVE PRODUCTS OR PART THEREOF; OR (2) REPAIR OF ANY DEFECTIVE PRODUCTS OR PART THEREOF; OR (3) RETURN OF THE PURCHASE PRICE FOR ANY DEFECTIVE PRODUCT OR PART THEREOF. IN NO EVENT SHALL SELLER'S LIABILTY HEREUNDER OR OTHERWISE ARISING RELATIVE TO THE SALE OF THE PRODUCTS EXCEED IN ANY EVENT OR UNDER ANY THEORY OR CAUSE OF ACTION, THE PURCHASE PRICE PAID BY PURCHASER TO SELLER FOR THE DEFECTIVE PRODUCT(S).

(d)   **Only Warranty is Found in These Terms.** No agent, employee or representative of **Seller** (or any distributor, dealer or sales representative of **Seller**) has the authority to bind **Seller** to any affirmation, representation or warranty concerning the Products sold hereunder, and unless such affirmation, representation or warranty is specifically included in these Terms and Conditions, it will not form a part of the basis of these Terms and Conditions and shall in no way be binding upon the **Seller** or enforceable by **Purchaser**.

(e)   **Limitations of Actions.** Any statute or law to the contrary notwithstanding, any actions to recover for any loss or damage arising out of, connected with, or resulting from any Quotation for or sale of Products, or from the performance or breach thereof must be commenced with one (1) year period after the cause of action accrues to **Purchaser**, unless otherwise extended by **Seller** in writing. It is expressly agreed that there are no warranties of future performance pertaining to the Products that are the subject of these Terms and Conditions that would extend such one-year period of limitation.

## 10.   Patent Infringement

**Seller** is not aware of any patents that might apply to the Products or their designs, and therefore, Seller makes no representation that the Products will not in and of themselves infringe any patent of the United States. Purchaser shall bear all responsibility for ensuring the Products do not infringe on any patent rights or know-how, and Purchaser shall defend, indemnify, and hold harmless Seller in the event a claim is asserted against either party for such infringement, regardless of whether such claim has any merit.

In no event will **Seller** and/or Selling Parties be liable for any patent infringement based on the use of the Products for purposes other than those for which they are sold by **Seller**. **Seller** makes no warranty against patent infringement resulting from portions of the Products made to **Purchaser's** specifications or the use of Products in combination with any other Products or in the practice of any process and if a claim, suit or action against the Manufacturing or Selling Parties is based thereon, **Purchaser** shall defend, indemnify and save **Seller** and the Manufacturing and Selling Parties harmless from and against any and all claims, losses or damages arising there from.

## 11.    Non-Circumvention

**Purchaser** agrees that for as long as it is doing business with **Seller** and for three (3) years after the delivery of and payment for the Products covered in **Purchaser's** final purchase, it will not: i) directly or indirectly, place orders with, or attempt to purchase goods from, **Seller's** suppliers for Products that **Seller** has sold to **Purchaser** or similar Products, or provided quotes for, or ii) direct potential purchasers to **Seller's** suppliers or assist potential purchasers to contact **Seller's** suppliers.  It is acknowledged and agreed that **Purchaser** will be deemed to be in material breach of this agreement if any entity controlled by, or under common control with **Purchaser**, violates this "non-circumvention" provision.  **Purchaser** understands that this restriction is necessary and reasonable due to the considerable time, effort and cost expended by **Seller** in identifying, vetting and cultivating a relationship with reliable suppliers, and establishing such suppliers as a valuable resource of **Seller**.  In the event **Purchaser** approaches **Seller's** suppliers, directly or indirectly, without **Seller's** consent or involvement, **Purchaser** agrees that it will have caused irreparable harm to **Seller's** business.

## 12.    Force Majeure

**Seller's** obligations hereunder are subject to, and **Seller** shall not be held responsible for, any delay or failure to make delivery of all or any part of the Products due to acts or circumstances beyond the control of **Seller**, including, but not limited to, labor difficulties, fires, casualties, accidents, acts of God, acts of terrorism, materials fluctuations in currency exchange rates, transportation difficulties, inability to obtain Products, materials, components or qualified labor sufficient to timely perform part or all of any obligation, or governmental regulations or actions.  In the event of the occurrence of any of the foregoing, at the option of **Seller**, **Seller** shall be excused from the performance hereunder or the performance of the **Seller** shall be correspondingly extended.

## 13.    Miscellaneous Provisions

a.    These Terms and Conditions constitute the entire agreement between **Seller** and **Purchaser** as it relates to the purchase and sale of Products to **Purchaser** by **Seller** and the liability of the Manufacturing and Selling parties, and supersede any and all prior agreements, correspondence, quotations or understandings heretofore enforced between the parties relating to the subject matter hereof.

b.   If any term or condition or part of these Terms and Conditions is held invalid, the remaining terms and conditions hereof shall not be affected thereby.

c.   These Terms and Conditions may be modified, canceled or rescinded only by a written agreement by both parties executed by their duly authorized agents.

d.   All rights available to **Seller** under the Uniform Commercial Code except as specifically limited or excluded herein (even though not specifically enumerated), are reserved to **Seller** as remedies available in the event of default or breach by **Purchaser**.

e.   This agreement and any sale of Products to **Purchaser** shall be deemed to have been made in and governed by the substantive laws of the State of Illinois, without regard to choice-of-law provisions. **Seller** and **Purchaser** irrevocably consent to the exclusive jurisdiction of the courts of the State of Illinois (and the Federal courts having jurisdiction in the State of Illinois) for purposes of any judicial proceeding that may be instituted in connection with any matter arising out of or relating to these terms or any sales pursuant hereto.

f.   Any failure by either party to enforce at any time any term or condition hereof shall not be considered a waiver of such party's right thereafter to enforce the same or any other term or condition hereof.

g.   These Terms and Conditions shall be binding upon the successors and legal representatives of **Purchaser** and **Seller**.

h.   The Terms and Conditions and any agreement between the parties may not be assigned without the express written consent of the parties hereto. Any attempted assignment of rights or delegation of duties shall be void.

i.   Upon request by **Seller**, **Purchaser** shall provide **Seller** with all customer information and documentary and other assistance required to maintain strict compliance with federal, state and local laws. **Purchaser** shall take all actions as may be necessary to assure that no customer contravenes any laws or the provisions of any approvals/licenses or exemptions. **Seller** shall be relieved of all obligations to provide any Products, spare parts or technical data to **Purchaser** (or its customer(s)) if **Purchaser** (or such customer) violates any laws, or if any approvals/licenses are suspended or revoked.

## 14.   Confidentiality

All drawings, designs, specifications, manuals and programs furnished to **Purchaser** by **Seller** shall remain the confidential and proprietary property of **Seller**. **Purchaser** hereby agrees that such information, except as may be found in the public domain, shall be held in strict confidence by **Purchaser** and shall not be disclosed or circulated by **Purchaser** to any third parties.  Copyright in all materials made available by **Seller** shall remain in **Seller** at all times.

## Contact Us

If you have any questions regarding this policy, please contact:

Li Gear
Attn : Mr. Will Li, Vice President
1292 Lakeview Drive
Romeoville, IL 60446
Phone: 630.226.1688
Email   wli@ligear.com


These Terms and Conditions were last revised and made effective as of May _____, 2011.


N:\SYS08\12700\Documents\Li Gear TOS- Terms and Conditions of Sale Rev1.doc

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LI GEAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 16-cv-04657 |
| v. | ) | |
| | ) | |
| KERR MACHINE CO., | ) | Honorable Mary M. Rowland |
| | ) | |
| Defendants. | ) | |

## STIPULATION TO DISMISS PURSUANT TO RULE 41(a)(1)

Pursuant to Federal Rule of Civil Procedure 41(a)(1), Plaintiff, LI GEAR, INC. and Defendant, KERR MACHINE CO., stipulate to dismiss this action with prejudice pursuant to settlement, each party to bear its own costs and fees. This Court shall retain jurisdiction over the parties to enforce the terms of this settlement.

**APPROVED:**                    **APPROVED:**

**LI GEAR, INC.**                   **KERR MACHINE CO.**

By: _____    By: _____
    Edward J. Underhill, Esq.            James D. Adducci, Esq.
    Masuda, Funai, Eifert & Mitchell, Ltd.   Marshall L. Blankenship, Esq.
    Attorneys for Plaintiff              Attorneys for Defendant
    203 N. LaSalle Street, Suite 2500       150 N. Michigan Avenue, Suite 2130
    Chicago, Illinois 60601-1262           Chicago, IL 60601-7524

                                     William W. Speed, Esq.
                                     Braly, Braly, Speed & Morris, PLLC
                                     P.O. Box 2739
                                     Ada, OK 74821

EXHIBIT
"3"

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| KERR MACHINE CO., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant | ) | Case No. 19-cv-6942 |
| | ) | |
| v. | ) | Hon. John Z. Lee |
| | ) | |
| LI GEAR, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## NOTICE OF DEPOSITION OF BRANDON AYRES

TO:     Trevor K. Scheetz
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

counsel for Defendant, LI GEAR, INC., will take the deposition by oral examination of Brandon

Ayres. The deposition will begin at the date and time set forth below, or another date and time

agreed to by the parties. The deposition will be taken in person, at the place set forth below. The

deposition will be taken before a notary public or other officer authorized by law to administer

oaths and will be recorded by stenographic means.

DATE OF DEPOSITION:    March 22, 2022
TIME OF DEPOSITION:     9:30 a.m. Central
PLACE OF DEPOSITION:  Masuda, Funai, Eifert & Mitchell, Ltd.
203 North LaSalle Street, Suite 2500
Chicago, Illinois 60601

Dated:  March 9, 2022

Respectfully submitted,

**LI GEAR, INC.**

By:      /s/ Jiwon J. Yhee
         Edward J. Underhill, Esq.
         Jiwon J. Yhee, Esq.
         Kenton P. Knop, Esq.
         Masuda, Funai, Eifert & Mitchell, Ltd.
         203 N. LaSalle Street, Suite 2500
         Chicago, Illinois 60601-1262
         P:  (312) 245-7500
         F:  (312) 245-7467
         E-Mail:  eunderhill@masudafunai.com
         E-Mail:  jyhee@masudafunai.com
         E-Mail:  kknop@masudafunai.com

         ***Attorneys for Defendant, Li Gear, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, the foregoing **NOTICE OF DEPOSITION OF**

**BRANDON AYRES** was served upon all counsel of record listed below via email transmission.

Trevor K. Scheetz
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, Illinois 60602
tscheetz@sperling-law.com


/s/ Jiwon J. Yhee

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KERR MACHINE CO., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant | ) | Case No. 19-cv-6942 |
| | ) | |
| v. | ) | Hon. John Z. Lee |
| | ) | |
| LI GEAR, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## <u>NOTICE OF DEPOSITION OF JAKE FOSTER</u>

TO:    Trevor K. Scheetz
        Sperling & Slater, P.C.
        55 West Monroe Street, Suite 3200
        Chicago, Illinois 60603

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure, counsel for Defendant, LI GEAR, INC., will take the deposition by oral examination of Jake Foster. The deposition will begin at the date and time set forth below, or another date and time agreed to by the parties. The deposition will be taken in person, at the place set forth below. The deposition will be taken before a notary public or other officer authorized by law to administer oaths and will be recorded by stenographic means.

DATE OF DEPOSITION:    March 22, 2022
TIME OF DEPOSITION:    1:30 p.m. Central
PLACE OF DEPOSITION:  Masuda, Funai, Eifert & Mitchell, Ltd.
                          203 North LaSalle Street, Suite 2500
                          Chicago, Illinois 60601

Dated:  March 9, 2022

Respectfully submitted,

**LI GEAR, INC.**

By:      /s/ Jiwon J. Yhee
        Edward J. Underhill, Esq.
        Jiwon J. Yhee, Esq.
        Kenton P. Knop, Esq.
        Masuda, Funai, Eifert & Mitchell, Ltd.
        203 N. LaSalle Street, Suite 2500
        Chicago, Illinois 60601-1262
        P:  (312) 245-7500
        F:  (312) 245-7467
        E-Mail:  eunderhill@masudafunai.com
        E-Mail:  jyhee@masudafunai.com
        E-Mail:  kknop@masudafunai.com

        *Attorneys for Defendant, Li Gear, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, the foregoing **NOTICE OF DEPOSITION OF**

**JAKE FOSTER** was served upon all counsel of record listed below via email transmission.


Trevor K. Scheetz
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, Illinois 60602
tscheetz@sperling-law.com




/s/ Jiwon J. Yhee

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KERR MACHINE CO., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant | ) | Case No. 19-cv-6942 |
| | ) | |
| v. | ) | Hon. John Z. Lee |
| | ) | |
| LI GEAR, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## <u>NOTICE OF DEPOSITION OF MARK NOWELL</u>

TO:    Trevor K. Scheetz
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure, counsel for Defendant, LI GEAR, INC., will take the deposition by oral examination of Mark Nowell. The deposition will begin at the date and time set forth below, or another date and time agreed to by the parties. The deposition will be taken in person, at the place set forth below. The deposition will be taken before a notary public or other officer authorized by law to administer oaths and will be recorded by stenographic means.

DATE OF DEPOSITION:    March 23, 2022
TIME OF DEPOSITION:    9:30 a.m. Central
PLACE OF DEPOSITION:  Masuda, Funai, Eifert & Mitchell, Ltd.
                                    203 North LaSalle Street, Suite 2500
                                      Chicago, Illinois 60601

Dated:  March 9, 2022

Respectfully submitted,

**LI GEAR, INC.**

By:     <u>/s/ Jiwon J. Yhee</u>
            Edward J. Underhill, Esq.
            Jiwon J. Yhee, Esq.
            Kenton P. Knop, Esq.
            Masuda, Funai, Eifert & Mitchell, Ltd.
            203 N. LaSalle Street, Suite 2500
            Chicago, Illinois 60601-1262
            P:  (312) 245-7500
            F:  (312) 245-7467
            E-Mail:  eunderhill@masudafunai.com
            E-Mail:  jyhee@masudafunai.com
            E-Mail:  kknop@masudafunai.com

            ***Attorneys for Defendant, Li Gear, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, the foregoing **NOTICE OF DEPOSITION OF**

**MARK NOWELL** was served upon all counsel of record listed below via email transmission.


Trevor K. Scheetz
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, Illinois 60602
tscheetz@sperling-law.com



/s/ Jiwon J. Yhee

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KERR MACHINE CO., | ) | |
| | ) | |
|     Plaintiff/Counter-<br>    Defendant | ) ) | Case No. 19-cv-6942 |
| | ) | |
| v. | ) | Hon. John Z. Lee |
| | ) | |
| LI GEAR, INC., | ) | |
| | ) | |
|     Defendant/Counter-<br>    Plaintiff. | ) ) | |

## <u>NOTICE OF DEPOSITION OF MIKE MAY</u>

TO:    Trevor K. Scheetz
         Sperling & Slater, P.C.
         55 West Monroe Street, Suite 3200
         Chicago, Illinois 60603

        PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

counsel for Defendant, LI GEAR, INC., will take the deposition by oral examination of Mike May.

The deposition will begin at the date and time set forth below, or another date and time agreed to

by the parties. The deposition will be taken in person, at the place set forth below. The deposition

will be taken before a notary public or other officer authorized by law to administer oaths and will

be recorded by stenographic means.

        DATE OF DEPOSITION:   March 23, 2022
        TIME OF DEPOSITION:    1:30 p.m. Central
        PLACE OF DEPOSITION:  Masuda, Funai, Eifert & Mitchell, Ltd.
                               203 North LaSalle Street, Suite 2500
                               Chicago, Illinois 60601

Dated:  March 9, 2022

Respectfully submitted,

**LI GEAR, INC.**

By:      /s/ Jiwon J. Yhee
        Edward J. Underhill, Esq.
        Jiwon J. Yhee, Esq.
        Kenton P. Knop, Esq.
        Masuda, Funai, Eifert & Mitchell, Ltd.
        203 N. LaSalle Street, Suite 2500
        Chicago, Illinois 60601-1262
        P:  (312) 245-7500
        F:  (312) 245-7467
        E-Mail:  eunderhill@masudafunai.com
        E-Mail:  jyhee@masudafunai.com
        E-Mail:  kknop@masudafunai.com

        ***Attorneys for Defendant, Li Gear, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, the foregoing **NOTICE OF DEPOSITION OF**

**MIKE MAY** was served upon all counsel of record listed below via email transmission.

Trevor K. Scheetz
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, Illinois 60602
tscheetz@sperling-law.com



/s/ Jiwon J. Yhee